UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-11633-DJC ) |
| NAVELLIER & ASSOCIATES, INC., and LOUIS NAVELLIER | ) ) ) ) |
| Defendants. | ) ) |

**JOINT STATEMENT AND PROPOSED PRETRIAL SCHEDULE**

Pursuant to Fed. R. Civ. P. 26(f), Local Rule 16.1, and this Court's February 2, 2018 Notice of Scheduling Conference (Dkt. No. 37), counsel for the plaintiff Securities and Exchange Commission (the "Commission"), and counsel for defendants Navellier & Associates, Inc. and Louis Navellier submit this Joint Statement and Proposed Pretrial Schedule.

**I.      Statements Regarding Liability and Relief Sought**

   **a. Plaintiff**

Plaintiff alleges that from 2010 to 2013, investment adviser Navellier and its principal, Mr. Navellier, defrauded their clients and prospective clients, misleading them about the performance track record of the "Vireo AlphaSector" investment strategies that Navellier offered.  First, Navellier performed inadequate due diligence, ignoring and concealing red flags indicating that the investment strategies had not performed as advertised.  Instead, Navellier proceeded to recommend the Vireo AlphaSector strategies to clients.  Second, Navellier created and distributed advertisements and client communications about Vireo AlphaSector's performance track record, even though it knew it lacked information to support such statements.

These marketing materials were materially false and misleading. Finally, when they fully understood that the track record from F-Squared had been fabricated, Navellier and Mr. Navellier recognized that their marketing materials with this false and misleading information could get them into legal trouble. Instead of truthfully informing their clients about their prior misrepresentations and telling clients the truth about the performance track record, Navellier and Mr. Navellier arranged to sell the Vireo line of business directly to F-Squared—profiting handsomely while keeping the fraud hidden. Through their conduct, Defendants violated their fiduciary duty, and, while acting as investment advisers, have employed devices, schemes and artifices to defraud their investment advisory clients and have engaged in acts, transactions, practices and courses of businesses which operated as a fraud on their investment advisory clients, in violation of Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act"). Mr. Navellier in the alternative aided and abetted Navellier's violations of Advisers Act Sections 206(1) and (2). In addition, Navellier violated Section 206(4) of the Advisers Act and Rule 206(4)-1(a)(5) thereunder by publishing and distributing advertisements and other client communications containing untrue material information.

The Commission seeks:

a. entry of appropriate permanent injunctions, including an injunction prohibiting Defendants from further violations of the relevant provisions of the federal securities laws;

b. disgorgement of Defendants' ill-gotten gains, plus pre-judgment interest; and,

c. imposition of civil penalties due to the egregious nature of Defendants' violations.

### b. Defendants

Briefly, Defendants Navellier & Associates Inc. ("NAI") and Louis Navellier ("Mr. Navellier") deny all of the above allegations, deny that they violated any fiduciary duties, deny

that they employed any devices, schemes or artifices to defraud their investment advisory clients, deny that they committed any fraud on their clients, and deny that they violated Sections 206(1) or 206(2) or 206(4) of the Investment Advisers Act or Rule 206(4)-1(a)(5), and deny that Mr. Navellier aided or abetted in any violations of Sections 206(1) or 206(2) or 206(4) or Rule 206(4)-1(a)(5). To the contrary, NAI and Mr. Navellier, along with numerous other investment advisors and investment advisory firms that dealt with F-Squared (and Howard Present), were the victims of F-Squared's and Howard Present's purported fraud (if there was any), regarding F-Squared's allegedly false performance history for its Alpha Sector strategy and its allegedly false claim that Alpha Sector strategy had been applied to live money (actual assets under management).

NAI and Mr. Navellier did not know, and still do not know, that F-Squared's performance claims, live money claims and non-back tested claims were false. NAI, which conducted more due diligence than others in the industry, was led to believe and did reasonably believe that F-Squared performance claims for the AlphaSector strategies that NAI used were true.

NAI's clients were not damaged as a result of the supposed fraudulent F-Squared past performance history in NAI's marketing material, which material was provided, almost exclusively, to sophisticated analysts, brokers or investment advisors who were required to do their own due diligence (and did) regarding the AlphaSector strategies. In fact, NAI's clients which invested in NAI VIREO AlphaSector strategies *made* a total of more than $350 million.

NAI's marketing materials disclosed its own GIPS compliant *actual* performance, made legally compliant disclosures to investors and potential investors that F-Squared's performance was based on hypothetical performance, and was based on an index, and that the past

performance information was provided by F-Squared and was otherwise compliant with the law and SEC's no-action letters.

The SEC's claims are, for the most part, barred by the five year statute of limitations, and there is no legal basis for Plaintiff's claim to disgorgement of NAI's advisory fees before August, 2011 or to most of those fees between August, 2011 and August, 2015 and no legal basis for disgorgement of (or penalty for) NAI's $14 million sale of its VIREO business to F-Squared.

Mr. Navellier did not market the VIREO AlphaSector strategies to NAI clients or anyone else. There was no conflict of interest or anything improper about NAI's sale of its VIREO business.

The SEC has engaged in selective enforcement and denied Defendants equal protection of the law by seeking to impose liability on NAI and Mr. Navellier while not seeking to bring any enforcement actions against others equally situated and more culpable than NAI or Mr. Navellier, for similar alleged acts and omissions.

**II.    Rule 26(f) Conference**

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.1, counsel for the Commission and counsel for the defendants had several teleconferences to discuss: (i) the nature and basis for their claims and defenses; (ii) the possibility of a prompt settlement or resolution of this case; (iii) arrangements for the disclosures required by Rule 26(a)(1); (iv) a proposed pretrial plan for the case that includes a discovery plan; (v) whether any items needed to be addressed by the court at the scheduling conference; and (vi) whether they will consent to trial by magistrate judge.

### III. Topics to Discuss at Scheduling Conference

**Plaintiff:** Plaintiff believes that Defendants' counsel, Attorney Samuel Kornhauser, is a witness to and participant in non-privileged conversations/emails concerning certain aspects of Defendants' alleged fraud. At minimum, Mr. Kornhauser and Mr. Navellier discussed Navellier's conclusions that the F-Squared product underlying Navellier & Associates' Vireo AlphaSector product was a fraud and the sale of the Vireo line of business was a potential way to avoid scrutiny from the Securities and Exchange Commission for the misrepresentations made in Navellier's advertising materials. Plaintiff believes that these communications were not privileged and will be admissible at trial. Thus, Plaintiff will seek to take Mr. Kornhauser's deposition regarding these communications and may call Mr. Kornhauser as a witness at trial.

Plaintiff wishes to alert the Court to the potential conflicts stemming from Mr. Kornhauser's potential status as deponent and trial witness, and to discuss those issues during the Scheduling Conference if the Court wishes.

**Defendants:** NAI's and Mr. Navellier's trial counsel, Samuel Kornhauser and Mr. Navellier and NAI, strenuously disagree with Plaintiff's assertions above i.e. that Mr. Navellier (or NAI) engaged in any fraud or that Mr. Kornhauser participated in any non-privileged conversations/emails concerning certain aspects of what the SEC incorrectly asserts was fraud in connection with the Alpha Sector strategy or NAI's sale of its Vireo business. All communications if any, regarding Alpha Sector or the sale to F-Squared, were attorney-client privileged and are not subject to discovery or trial testimony.

To the contrary, the SEC has been investigating this matter for over five (5) years, has interviewed numerous other NAI employees and other witnesses regarding the alleged fraud and

sale of NAI's Vireo business and never sought to interview Mr. Kornhauser, nor could it, since any such communications were privileged.

Defendants believe this is an improper attempt to deprive defendants of the trial counsel of their choice. Defendants further believe this is in retaliation for defendants' proposed motion to amend to assert a counterclaim for selective enforcement.

### IV.     Pending Motions

None.

### V.     Proposed Schedule

The parties hereto propose the following schedule for the completion of discovery and the submission of dispositive motions:

| Date | Event |
|---|---|
| 3/1/18 | Exchange of initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) |
| 3/9/18 | Scheduling Conference<br>Mediation session with Magistrate Judge Boal |
| 4/13/18 | Amend pleadings**:**  Plaintiff believes the time to amend as a matter of right has past (Defendants' Answer was filed October 10, 2018) and will oppose any motion by Defendants to amend their pleadings.  Defendants have retained new counsel and they may seek to amend their answer, affirmative defenses, and assert counterclaims.<br><br>Completion of fact discovery<br>Plaintiff proposes:  1/1/19<br>Defendants propose:  4/1/19<br><br>Exchange of Plaintiff's and Defendants' expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B)<br>Plaintiff proposes:  2/1/19<br>Defendants propose:  5/1/19<br><br>Exchange of rebuttal expert reports |

      Plaintiff proposes:  3/1/19
      Defendants propose:  6/1/19

      Completion of expert depositions
      Plaintiff proposes:  4/1/19
      Defendants propose:  7/1/19

      Motions for Summary Judgment pursuant to Fed. R. Civ. P. 56 due
      Plaintiff proposes:  5/1/19
      Defendants propose:  8/3/19

      Oppositions to Motions for Summary Judgment due
      Plaintiff proposes:  5/22/19
      Defendants propose:  9/3/19

      Reply Briefs in support of Summary Judgment Motions due
      Plaintiff proposes:  6/5/19
      Defendants propose:  9/24/19

## VI. Limitations on Discovery

The parties do not anticipate needing relief from the limitation on interrogatories, requests for admission, and requests for production of documents set forth in Local Rule 26.1(c), but reserve the right to move for such relief after further discovery.  However, with regard to the limits on depositions and time limits on depositions, the parties believe:

**Plaintiff:**  Plaintiff believes that no deviation from the limit on the number and length of depositions is necessary in this matter.  If either party approaches the close of discovery and believes that it will need a few additional depositions, Plaintiff will happily negotiate that in good faith at that time, pursuant to Local Rule 26.2(b).  But Defense counsel has informed Plaintiff of his intention to take more than <u>50</u> depositions.  Defendants seek to parlay the Commission's investigation and prosecution of multiple other investment advisory firms that committed violations similar to those by Navellier into a marathon discovery process, without consideration

of what parts of those other investigations might actually be relevant or admissible in a trial of Navellier & Associates and Louis Navellier.

To the extent that Defendants' proposed depositions relate to their intended selective prosecution claim, Plaintiff believes that those depositions will not be necessary.  The Commission has charged 22 entities and people related to its investigation of F-Squared, including Defendants here.  Even if Defendants are successful in amending their Answer to add this counterclaim, they cannot show either that they were "prosecuted when others were not" or that "the government's prosecution was in bad faith."  *Howard v. SEC*, 77 Fed. Appx. 2 (2003)(defining elements of selective prosecution claim).  The Commission believes this counterclaim would be dismissed if brought.

Plaintiff suggests limiting discovery to the Local Rule 26.1(c) limits at this time, allowing the Defendants to reserve their rights to return to this court, pursuant to Local Rule 26.2(b), to obtain permission for additional depositions for good cause shown.

**Defendants:**   Defendants submit they will need to take in excess of 50 depositions. Defendants are informed that the SEC has already interviewed or subpoenaed records from more than 100 witnesses or firms as part of its investigation in this this case, the F-Squared and Howard Present investigations.  Defendants are informed that over 13 million pages of documents were produced in the related Howard Present case and F-Squared-related investigations of approximately nineteen other investment advisory firms that Plaintiff has "settled" with that used F-Squared's Alpha Sector strategies.

There are key witnesses such as Howard Present, Corey Hoffstein, David Morton and others who have been interviewed at length on multiple occasions for more than 7 hours each, and these and other key witnesses may have to be deposed for more than 7 hours for Defendants

to full discover the facts and prepare their defense at trial. This is a complicated, highly fact-intensive case involving hundreds of witnesses and million of pages of documents.

### VII.  Phased Discovery

The parties do not believe phased discovery is appropriate except to conduct expert discovery after fact discovery is completed.

### VIII.  Trial by Magistrate Judge

The parties do not consent to referring the case to the Magistrate Judge for purposes of a jury trial.

### IX.  Use of Alternative Dispute Resolution Programs (LR 16.4)

The parties have agreed to mediate this matter before Magistrate Judge Boal on March 9, 2018. The parties contemplate mediation as described in Local Rule 16.4(c)(2).

### X.  Local Rule 16.1(D)(3) Certifications

The Commission, through its undersigned counsel, certifies that it is aware of the potential costs that may be associated with this litigation and the availability of alternative dispute resolution procedures. Counsel for the defendants certifies that he has conferred with his clients or client representatives with respect to: (a) establishing a budget for the costs of conducting the full course, and various alternative courses, of this litigation, and (b) the resolution of this litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4.

Dated: March 2, 2018

Respectfully submitted,
**SECURITIES AND EXCHANGE COMMISSION**

By its Attorneys,

/s/     Marc J. Jones
Marc J. Jones  (Mass. Bar #645910)
    Senior Trial Counsel
William J. Donahue  (Mass. Bar #631229)
Senior Enforcement Counsel
Robert B. Baker (Mass. Bar No. 637438)
    Assistant Regional Director
Martin F. Healey (Mass. Bar No. 227550)
    Regional Trial Counsel

Boston Regional Office
33 Arch Street
Boston, MA  02110
(617) 573-8947 (Jones direct)
(617) 573-4590 (fax)
JonesMarc@sec.gov


**NAVELLIER & ASSOCIATES, INC. and LOUIS NAVELLIER**

By their Attorney,

/s/    Samuel Kornhauser
Samuel Kornhauser
Law Offices of Samuel Kornhauser
155 Jackson Street, Suite 1807
San Francisco, CA  (415) 981-6281 skornhauser@earthlink.net