UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION,
     Plaintiff,


     v.                                      CIVIL ACTION NO.
                                                17-11633-DJC

NAVELLIER & ASSOCIATES, INC.
and LOUIS NAVELLIER,
     Defendants.

**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' MOTION TO QUASH PLAINTIFF'S SUBPOENA**
**TO NON-PARTY ACA COMPLIANCE GROUP**
**AND FOR PROTECTIVE ORDER**
**(DOCKET ENTRY # 66)**

**December 21, 2018**


**BOWLER, U.S.M.J.**

     Defendants Navellier & Associates, Inc. ("NAI") and Louis Navellier ("Navellier") (collectively "defendants") move to quash a subpoena seeking documents in the hands of a third-party consultant, ACA Compliance Group ("ACA"), pertaining to NAI for the January 2012 to September 2013 time period on the basis of the attorney-client privilege and the work-product doctrine. (Docket Entry # 66) (Docket Entry # 69-1, ¶ 2) (Docket Entry # 69-2, p. 6).  Plaintiff Securities and Exchange Commission ("SEC") argues that the attorney-client privilege does not apply to third-party communications and ACA does not fall under a limited exception to this rule.  (Docket Entry # 69).  As to work-product, the SEC submits that litigation with the SEC was

not anticipated.  (Docket Entry # 69).  After conducting a

hearing on December 20, 2018, this court took the motion (Docket

Entry # 66) under advisement.

BACKGROUND

In or around February 2013, NAI retained ACA, an outside

consultant, to conduct a compliance review of NAI's marketing

materials regarding Vireo AlphaSector strategies, which NAI

licensed from F-Squared Investments, Inc. ("F-Squared").  (Docket

Entry # 1, ¶ 16) (Docket Entry # 19, ¶ 16) (Docket Entry # 68-1,

¶¶ 5, 8) (Docket Entry # 69-2, pp. 56, 68).  Having recently

learned about a Financial Industry Regulatory Authority, Inc.

("FINRA") enforcement action against a brokerage firm for

marketing exchange traded funds ("ETF"), Navellier, NAI's founder

and principal, grew concerned that the SEC "would possibly be

investigating NAI and other investment advisor firms that

advertised" ETF-based strategies.  (Docket Entry # 1, ¶ 14)

(Docket Entry # 19, ¶ 14) (Docket Entry # 68-1, ¶ 6).  At and

around the time period that Navellier engaged the services of

ADA, Navellier testified at his deposition that he did not

anticipate being sued "[a]t all" and he did not anticipate NAI

being sued separate and apart from conversations with his

attorney.  (Docket Entry # 69-2, pp. 67-68); (Docket Entry # 74,

p. 26) (errata corrections adding "separate and apart" language).

On January 29, 2013 near the outset of the engagement, NAI's

2

President forwarded various marketing materials directly to Ted
Eichenlaub ("Eichenlaub"), an ACA partner, for review. (Docket
Entry # 69-2, p. 15). In this contemporaneous email, Eichenlaub
invited NAI's President to follow up with him or his associate to
gain clarity on the issues without any mention of counsel.
Thereafter, ACA performed a mock audit of NAI in 2013 to give
guidance to Navellier. (Docket Entry # 69-2, p. 56). "[T]he
audit was fine" and confirmed that NAI "looked pretty good."
(Docket Entry # 69-2, p. 56). By affidavit, defendants' counsel
states that "ACA was retained . . . to assist [him] in providing
legal advice to NAI in anticipation of possible litigation with
the SEC" (Docket Entry # 68-1, ¶¶ 5, 7), which this court
discounts. See Cavallaro v. United States, 284 F.3d 236, 248
(1st Cir. 2002) (reviewing lower court's decision on privilege
and noting that "Goodman's statement was made after the fact, in
the midst of litigation, with little support in the
contemporaneous record").

In September 2013, the SEC's enforcement division "opened an
investigation into" F-Squared, including its representations
"concerning F-Squared's AlphaSector strategies." (Docket Entry #
69-1, ¶ 10). One "month later, the [SEC] subpoenaed NAI for
documents relating to the F-Squared investigation." (Docket
Entry # 69-1, ¶ 10). The SEC's enforcement division did not open
an investigation of NAI until more than two years later in May

2016. (Docket Entry # 69-1, ¶ 10).

DISCUSSION

A.  <u>Attorney-Client Privilege</u>

The contours of the attorney-client privilege under federal common law are "well honed." <u>Lluberes v. Uncommon Prods., LLC</u>, 663 F.3d 6, 24 (1st Cir. 2011). The privilege "protects 'only those communications that are confidential and are made for the purpose of seeking or receiving legal advice.'" <u>Id.</u> (quoting <u>In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)</u>, 348 F.3d 16, 22 (1st Cir. 2003)); <u>see also</u> <u>Cavallaro v. United States</u>, 284 F.3d at 248 (setting out classic formulation in 8 J.H. Wigmore, <u>Evidence</u> § 2292 (McNaughton rev. 1961)). The privilege does not immunize underlying facts available from another source just because a client disclosed the facts to an attorney. <u>See</u> <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 396 (1981); <u>see also</u> <u>Lluberes v. Uncommon Prods., LLC</u>, 663 F.3d at 25 n.22 (factual inquiry by expert unprotected because source of "'information is not confidential communications'" and fact that expert gathered and digested information for "'attorney to render legal advice thereon'" does not transform inquiry into "'privileged one'") (quoting treatise). Communications from an attorney to his client are "'privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence.'" <u>Lluberes v. Uncommon Prods., LLC</u>, 663 F.3d at 24 n.21 (quoting <u>United States v. Defazio</u>, 899

4

F.2d 626, 635 (7th Cir. 1990), in parenthetical).  Defendants, as the parties "invoking the privilege[,] must show both that it applies and that it has not been waived."  Id. at 24.

Defendants insist that the privilege extends to an outside consultant such as ACA because NAI hired ACA as part of an internal company review to assist NAI's counsel in advising his clients, NAI and Navellier (Docket Entry # 68-1, ¶ 4), regarding possible future litigation with the SEC.  (Docket Entry ## 68, 74).  The SEC disagrees and maintains that disclosure to an outside party such as ACA does not fall within the narrow exception to the waiver rule that applies when confidential communications are disclosed to the outside party.  (Docket Entry # 69).

In general, "disclosing attorney-client communications to a third party undermines the privilege."  Cavallaro v. United States, 284 F.3d at 246–247; see Lluberes v. Uncommon Productions, LLC, 663 F.3d at 24 (privilege "often said to be 'waived' when otherwise privileged communications are disclosed to a third party").  "An exception to this general rule exists for third parties employed to assist a lawyer in rendering legal advice."  Cavallaro v. United States, 284 F.3d at 247.  "The circumstances under which the exception applies are limited."  Dahl v. Bain Capital Partners, LLC, 714 F. Supp. 2d 225, 227 (D. Mass. 2010).  Known as "the Kovel doctrine," the third party "must be 'necessary, or at least highly useful, for the effective consultation between the client and the lawyer

5

which the privilege is designed to permit.'" <u>Cavallaro v. United States</u>, 284 F.3d at 247-48 (quoting <u>United States v. Kovel</u>, 296 F.2d 918, 922 (2d Cir. 1961)). Moreover, the "'necessity' element means more than just useful." <u>Id.</u> at 249. Indeed, the third party's involvement "must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." <u>Id.</u> Whereas the "agency relationship between the parties is relevant to" the <u>Kovel</u> exception to the waiver rule, it is "not dispositive." <u>Id.</u> at 247 (further noting that a showing that the third party (Ernst & Young) is an agent of the attorneys (Hale & Dorr), or the clients (the Cavallaros) "is not sufficient to sustain the privilege"). Although the "<u>Kovel</u> exception covers documents created by an outside, third-party accountant at an attorney's request for the purpose of advising and defending the client," the <u>Cavallaro</u> court makes clear that the third-party must be necessary to the lawyer in providing legal advice to the client in the sense of "nearly indispensable." <u>Id.</u> at 249 (paraphrasing <u>United States v. Judson</u>, 322 F.2d 460, 462-63 (9th Cir. 1963), and thereafter noting necessity element as meaning "more than just useful").

This court does not dispute that the privilege applies to internal investigations conducted by company lawyers or non-lawyer, company employees at the direction of company lawyers to ensure compliance with the law. <u>See</u>, <u>e.g.</u>, <u>In Re Kellogg Brown & Root, Inc.</u>, 756 F.3d 754, 757 (D.C. Cir. 2014) (discussing <u>Upjohn</u>, 449 U.S. at 390-392). Defendants' reliance on <u>Kellogg</u>,

6

however, is misplaced because the case did not involve use of an outside third-party consultant or an issue implicating the Kovel doctrine.  In other words, the existence of a waiver or an exception to any such waiver was not raised or at issue.  Rather, the Kellogg court rejected the lower court's reasoning that the investigation undertaken to determine compliance with regulations was not done for the purpose of obtaining legal advice.  Id. at 758, 760 (a significant purpose "was to obtain or provide legal advice" and by denying "privilege claim on the ground that the internal investigation was conducted in order to comply with regulatory requirements . . . and not just to obtain or provide legal advice," the lower court erred).  In a somewhat similar vein, the First Circuit in Lluberes stated it did not reach the Kovel doctrine as to whether a third-party's report was necessary and highly useful to the corporation's outside counsel because the report itself did not include client confidences or legal advice based on those confidences and intended to remain confidential.  Lluberes v. Uncommon Productions, LLC, 663 F.3d at 24.

     In addition to Kellogg, other cases cited by defendants are distinguishable.  See Massachusetts Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 293 F.R.D. 244, 248 (D. Mass. 2013) (although finding outside consultant's forensic review within attorney-client privilege, court did not address Kovel exception to third-party disclosure waiver, which was not raised, and instead discussed at-issue waiver applying state

7

law).  To the extent a 2001 Southern District of New York case rejects the position that "third-party consultants come within the scope of" the attorney-client "privilege only when acting as conduits or facilitators of attorney-client communications," In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 219 (S.D.N.Y. 2001), the expansive reach of the case is contrary to precedent in this district.  See Cavallaro v. United States, 284 F.3d at 246-249; Columbia Data Prod., Inc. v. Autonomy Corp., Civil Action No. 11-12077-NMG, 2012 WL 6212898, at *1, *7, *14-16 (D. Mass. Dec. 12, 2012) (denying attorney-client protection to third-party audit of plaintiff's licensee conducted under engagement letter with plaintiff's attorney "acting on behalf of CDP" and completed shortly before filing lawsuit for breach of license agreement); Dahl v. Bain Capital Partners, LLC, 714 F. Supp. 2d at 227-229.  Here, the ACA was not serving an interpretive role and was not "'necessary, or at least highly useful'" to defendants' counsel in providing legal advice to defendants.  Accordingly, the documents sought by the subpoena are not subject to attorney-client protection.

B.  Work-Product Doctrine

    The work product doctrine, codified in Rule 26(b)(3), Fed. R. Civ. P. ("Rule 26(b)"), "'protects from disclosure materials prepared by attorneys in anticipation of litigation.'"  American Civil Liberties Union Foundation, Inc. v. United States Dep't of Education, 320 F. Supp. 3d 270, 280-81 (D. Mass. 2018) (quoting Maine v. U.S. Dep't of Interior, 298 F.3d 60, 66 (1st Cir. 2002),

and omitting internal quotation marks), <u>appeal</u> <u>dismissed</u>, No.
18-1502, 2018 WL 6205442 (1st Cir. Oct. 31, 2018).  Under Rule
26(b)(3)(B), "[o]pinion work product reflecting the mental
impressions, conclusions or legal theories of a party's attorney
or representative receives heightened protection."  <u>Lobel v.</u>
<u>Woodland Golf Club of Auburndale</u>, Civil Action No. 15-13803-FDS,
2016 WL 7410776, at *2 (D. Mass. Dec. 22, 2016) (citing Rule
26(b)(3)(B)).  The "doctrine does not extend to 'materials
assembled in the ordinary course of business, or pursuant to
public requirements unrelated to litigation, or for nonlitigation
purposes,' even if the materials were prepared by a lawyer and
reflect 'legal thinking.'"  <u>Taghavidinani v. Riverview</u>
<u>Psychiatric Ctr.</u>, No. 1:16-CV-208-JDL, 2017 WL 3326754, at *3 (D.
Me. Aug. 3, 2017) (quoting <u>United States v. Textron Inc. &</u>
<u>Subsidiaries</u>, 577 F.3d 21, 30 (1st Cir. 2009), Rule 26, advisory
committee notes).

    "Depending on the circumstances, a document can contain
attorney work product, and thus fall within the protection, even
though a person other than an attorney, such as the attorney's
client or agent, drafts the document."  <u>Blattman v. Scaramellino</u>,
891 F.3d 1, 5 (1st Cir. 2018).  Furthermore, unlike the
aforementioned, more restrictive third-party disclosure rules
applicable to the attorney-client privilege, "disclosure of
work-product to a third-party does not necessarily waive the
protection; 'only disclosing material in a way inconsistent with
keeping it from an adversary waives work product protection.'"

Id. (citation omitted).  This court therefore reasonably assumes

that transmission of any work product between ACA and defendants'

counsel did not waive the privilege.

Defendants bear the burden to establish that the material

was prepared in anticipation of litigation.  See In re Grand Jury

Subpoena, 273 F. Supp. 3d 296, 304 (D. Mass. 2017) ("party

advancing the work-product doctrine bears the burden of

establishing that the protection applies").  "Courts usually

treat the commencement of a governmental investigation as both a

sufficient and a necessary condition to satisfy the 'anticipation

of litigation' requirement for the work-product to attach to an

attorney's files."  Id. at 305.  Here, the SEC did not commence

an investigation into NAI until more than *two* years after the end

date of the time period for documents sought in the subpoena,

September 2013.  Navellier's concern about possible future

litigation with the SEC in 2013 does not make the prospect of

litigation with the SEC anticipated.  Accordingly, the work-

product doctrine does not provide protection for the withheld

material.

It is therefore not necessary to address the SEC's remaining

argument that defendants relied on a defense of good faith.

(Docket Entry # 69, pp. 12-14).  Although the subpoenaed material

is not privileged, the time period (January 2012 to September

2013) appears overbroad inasmuch as ACA's engagement began in or

around January 2013.  The parties are therefore instructed to confer with each other in an effort to narrow the time frame.

CONCLUSION

In accordance with the foregoing discussion, the motion to quash (Docket Entry # 66) is **DENIED**.


_____/s/ Marianne B. Bowler_____<br>
**MARIANNE B. BOWLER**<br>
United States Magistrate Judge