```
             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

SECURITIES AND EXCHANGE COMMISSION,
    Plaintiff,


     v.                                    CIVIL ACTION NO.
                                           17-11633-DJC

NAVELLIER & ASSOCIATES, INC.
and LOUIS NAVELLIER,
        Defendants.

**MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTION FOR RECONSIDERATION
OF DECEMBER 21, 2018 ORDER
(DOCKET ENTRY # 79)**

**January 22, 2019**

**BOWLER, U.S.M.J.**

Defendants Navellier & Associates, Inc. ("NAI") and Louis Navellier ("Navellier") (collectively "defendants") seek reconsideration and a stay of a December 21, 2018 Order (Docket Entry # 76) denying attorney-client and work-product protection to documents in the hands of a third-party consultant, ACA Compliance Group ("ACA"), pertaining to NAI for the January 2012 to September 2013 time period. (Docket Entry # 79). After the Order issued, the parties agreed to limit the time period to January through September 2013. (Docket Entry # 80, p. 16). Defendants contend the decision is "clearly erroneous and contrary to the law." (Docket Entry # 79). More specifically, they argue this court erred primarily by: (1) not conducting an

in camera review of the withheld documents; and (2) misinterpreting and incorrectly distinguishing two cases, namely, In Re Kellogg Brown & Root, Inc., 756 F.3d 754, 757 (D.C. Cir. 2014) ("Kellogg"), and Massachusetts Mutual Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 293 F.R.D. 244, 248 (D. Mass. 2013) ("Mass Mutual"). (Docket Entry # 80).

Plaintiff Securities and Exchange Commission ("SEC") submits that: (1) defendants do not meet the requisite standard for reconsideration; (2) this court has no obligation to conduct an in camera review; and (3) this court properly understood the Kellogg and Mass Mutual decisions. (Docket Entry # 89). The SEC also disagrees with defendants' choice-of-law argument that this court erred by not giving "substantial weight" to "D.C. authority," i.e., Kellogg, on the basis that "ACA is a resident of Washington, D.C." (Docket Entry ## 80, n.3) (Docket Entry # 89).

## BACKGROUND

As explained in the factual background in the prior decision,[1] NAI retained ACA, an outside consultant, in or around February 2013 "to conduct a compliance review of NAI's marketing materials regarding Vireo AlphaSector strategies, which NAI

---

[1] Familiarity with the facts in the prior decision is assumed. The following is only a brief summary culled from the decision and material in the record before this court at that time.

2

licensed from F-Squared Investments, Inc." (Docket Entry # 76, p. 2). Having learned about an enforcement action against another brokerage firm, "Navellier, NAI's founder and principal, grew concerned that the SEC 'would possibly be investigating NAI and other investment advisor firms that advertised'" and marketed strategies for exchange traded funds. (Docket Entry # 76, p. 2). At his deposition and without referencing counsel, Navellier testified that he "relied on *ACA* to give [him] guidance."[2] (Docket Entry # 76, p. 3, with emphasis added) (Docket Entry # 69-2, p. 56). Navellier also used ACA to restore his credibility at NAI and influence individuals at NAI who were not respecting him. (Docket Entry # 69-2, p. 56) ("I relied on them to, basically--I tried to use them to influence other people in my firm that I had basically lost control over, or weren't respecting me . . . I wanted ACA to give me credibility . . ."). When asked at his deposition if he ended up "getting someone to review" NAI "and give a *factual* opinion of any shortcoming and exposures," Navellier responded affirmatively and that he "vented

---

[2] As explained in Cavallaro v. United States, 284 F.3d 236 (1st Cir. 2002), "if the advice sought is the accountant's rather than the lawyer's, no [attorney-client] privilege exists." Id. at 247. The record before this court at the time did not adequately show that NAI's communications with ACA prior to October 2013 were made for the purpose of obtaining legal advice from NAI's counsel. See id. As such, this principle provides an alternative basis to deem the privilege inapplicable to the January through September 2013 communications.

3

to" his attorney[3] as well as "some of the New York folks."
(Docket Entry # 69-2, p. 55) (emphasis added).

On January 29, 2013 near the outset of the engagement, NAI's President and Chief Compliance Officer ("NAI's President") "forwarded various marketing materials directly to Ted Eichenlaub ('Eichenlaub'), an ACA partner, for review" and invited Eichenlaub to discuss the items with him or his associate without any mention of counsel. (Docket Entry # 76, pp. 2-3) (Docket Entry # 69-2, p. 15). Navellier initially contacted Eichenlaub at the suggestion of another individual, who Navellier describes as an independent contractor located in New York. (Docket Entry # 69-2, p. 56). Thereafter, ACA performed a mock audit of NAI in and around July 2013 which did not involve NAI's attorney. (Docket Entry # 69-1, ¶ 7)[4] (Docket Entry # 76, p. 3) (Docket Entry # 69-2, p. 56). "NAI 'looked pretty good'" in the audit, according to Navellier. (Docket Entry # 76, p. 3) (Docket Entry # 69-2, p. 56).

In addition, at and around the time period that Navellier engaged ACA's services, Navellier did not anticipate being sued "[a]t all" and did not anticipate NAI being sued separate and

---

[3] During the deposition, Navellier's counsel instructed Navellier not to testify about his conversations with his attorney.

[4] Reliance on hearsay is permissible in determining whether a privilege exists. United States v. Frabizio, 459 F.3d 80, 89 n.14 (1st Cir. 2006); Fed. R. Evid. 104(a).

apart from conversations with his attorney.  (Docket Entry # 76, p. 2).  In the end, the SEC did not open an investigation into NAI until May 2016 and did not serve a subpoena on NAI in connection with a related investigation until October 2013, after the time span covered by the purportedly privileged documents.  These as well as other facts in the record satisfied this court that defendants did not meet their burden to show that the attorney-client privilege "applie[d] and that it has not been waived," Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011), or that the documents were made in "anticipation of litigation" under the work-product doctrine.  Fed. R. Civ. P. 26(b)(3).

## DISCUSSION

First and foremost, the standard to merit reconsideration of an interlocutory decision is difficult to meet.  See Mulero-Abreu v. Puerto Rico Police Dept., 675 F.3d 88, 95 (1st Cir. 2012).  To succeed on a motion for reconsideration, "'the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law.'"  Id.; accord Ellis v. United States, 313 F.3d 636, 648 (1st Cir. 2002) (reconsideration "warranted if there has been a material change in controlling law" or "newly discovered evidence bears on the question"); Yokozeki v. Carr-Locke, Civil Action No. 13-12587-MBB, 2017 WL

5

2818981, at *1 (D. Mass. June 29, 2017). The existence of a manifest injustice also provides a basis for reconsideration. Ellis v. United States, 313 F.3d at 648. The manifest injustice exception "requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong." Id.; Yokozeki, 2017 WL 2818981, at *1.

Here, defendants do not identify newly discovered evidence unavailable at the time they filed the initial motion to quash. Rather, they dispute this court's factual and credibility findings.

They also fail to show a manifest error of law. This court distinguished the Kellogg decision because it did not involve the presence or use of an outside third party consultant or agent.[5] (Docket Entry # 76, p. 7). As a result, the Kellogg decision did not implicate the Kovel doctrine.[6] (Docket Entry # 76, p. 7). As explained in the prior decision (Docket Entry # 76, pp. 5-6), the Kovel doctrine creates an exception to the principle that,

---

[5] The facts also did not give rise to an outside third-party agent acting as a functional employee of NAI.

[6] See United States v. Kovel, 296 F.2d 918 (2d Cir. 1961) (Friendly, J.) ("Kovel"). The individuals conducting the confidential internal investigation at the behest of the in-house attorneys in Kellogg were Kellogg, Brown & Root, Inc. employees. See id. at 756-758. To the extent there is any doubt, an affidavit cited by in the lower court in its decision explains the internal investigation in detail. United States v. Halliburton Co., et al., Civil Action No. 1:05-CV-1276(JSG) (D.D.C. March 6, 2014) (Docket Entry # 150, pp. 3-4, citing Docket Entry # 139-1).

6

"[g]enerally, disclosing attorney-client communications to a third party undermines the privilege." Cavallaro v. United States, 284 F.3d at 246-247; see Lluberes v. Uncommon Productions, LLC, 663 F.3d at 24 (privilege "often said to be 'waived' when otherwise privileged communications are disclosed to a third party"). As also stated in the decision (Docket Entry # 76, p. 5), "An exception to this general rule exists for third parties employed to assist a lawyer in rendering legal advice," Cavallaro v. United States, 284 F.3d at 247,[7] although the circumstances "are limited." Dahl v. Bain Capital Partners, LLC, 714 F. Supp. 2d 225, 227 (D. Mass. 2010). Thus, "*Kovel* requires that to sustain a privilege an accountant," i.e., a third party, "must be 'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit.'" Id. at 247-48 (quoting Kovel, 296 F.2d at 922).

Ultimately, this court held that ACA, as a third-party retained by NAI, "was not '"necessary, or at least highly useful"' to defendants' counsel in providing legal advice to defendants." (Docket Entry # 76, p. 8). As a result, this court concluded that "the documents sought by the subpoena are not subject to attorney-client protection." (Docket Entry # 76, p.

---

[7] The Cavallaro court did not determine whether "the attorney or client . . . must hire the accountant in order to sustain a privilege under *Kovel*." Cavallaro v. United States, 284 F.3d at 247.

7

8). Even eliminating the interpretive role requirement and restricting the Kovel doctrine to third parties "'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit,'" Cavallaro v. United States, 284 F.3d at 247 (quoting Kovel); see also Lluberes v. Uncommon Prods., LLC, 663 F.3d at 24, the express and implicit factual findings by this court sufficiently established that ACA was not "necessary, or at least highly useful to defendants' counsel in providing legal advice to defendants." (Docket Entry # 76, p. 8) (quoting Cavallaro v. United States, 284 F.3d at 247-48) (internal quotation marks omitted)

In seeking reconsideration, defendants rely on the following language in Kellogg:

> communications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege. *See FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C.Cir. 1980); *see also* 1 Paul R. Rice, Attorney-Client Privilege in the United States § 7:18, at 1230–31 (2013) ("If internal investigations are conducted by agents of the client at the behest of the attorney, they are protected by the attorney-client privilege to the same extent as they would be had they been conducted by the attorney who was consulted."). So that fact, too, is not a basis on which to distinguish *Upjohn*.

In re Kellogg Brown & Root, Inc., 756 F.3d 754, 758 (D.C. Cir. 2014); (Docket Entry # 80, p. 9). This court agrees that attorneys often need and require the assistance of agents to effectively represent and communicate with clients. See

Cavallaro v. United States, 284 F.3d at 247 (discussing Kovel, 296 F.2d at 921). Avoiding the extension of the privilege to any and all agents an attorney (or client) hires, however, Kovel restricts the privilege to third party agents who, as noted above, are "'necessary or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit.'" Id. at 247-48. In fact, the same treatise quoted above in Kellogg acknowledges the abundant case law, including Kovel, that imposes the threshold requirement that such agents must be "'necessary,'" "'highly useful,'" "'indispensable,'" or "'required'" to uphold the privilege. 1 Paul R. Rice, Attorney-Client Privilege in the United States § 3:4, at 154-158 (2018).

Defendants also point out, correctly, that "the First Circuit has 'never actually adopted *Kovel* . . ..'" (Docket Entry # 80, p. 10) (quoting Lluberes v. Uncommon Prods., LLC, 663 F.3d at 24 n.20). The abbreviated quotation distorts the import of the statement which, in full, reads:

> We have never actually adopted *Kovel*, *despite its pedigree and wide acceptance*, but have assumed for the sake of argument that we *would do so in the right case*. *Cavallaro*, 284 F.3d at 247 n. 6. At the risk of being overly cautious, we follow that approach again today.

Lluberes v. Uncommon Prods., LLC, 663 F.3d at 24 n.20 (emphasis added). The entire statement therefore indicates that, in the right case, the First Circuit will adopt Kovel.

Defendants' contention that this court incorrectly

9

distinguished Mass Mutual is itself incorrect.  As explained in this court's decision, Mass Mutual involved an at-issue waiver, which does not apply to the circumstances of the case at bar. (Docket Entry # 76, pp. 7-8).

Reconsideration is also inappropriate with respect to the ruling denying work product protection to the ACA communications. (Docket Entry # 76, p. 10).  There was no manifest error of law or other basis to warrant reconsideration.  Defendants simply did not sufficiently show that the material was prepared in anticipation of litigation.  (Docket Entry # 76, p. 10). Defendants therefore fail to meet the requisite standard for reconsideration relative to their work product claim.

As to in camera review, the record provided a sufficient basis to assess the attorney-client privilege and the work product doctrine.  The declarations, deposition transcripts, emails, and other documents submitted by the parties created a relatively complete record with sufficient information to gauge the attorney-client privilege and the work product doctrine. Although in camera review provides a prudential means to discern the applicability of a privilege claim, the decision to conduct an in camera review generally lies within the discretion of this court.  See Lluberes v. Uncommon Prods., LLC, 663 F.3d at 26-27.

Finally, because jurisdiction is premised on a federal question, "federal common law provides the rule of decision." Coffin v. Bowater, Inc., No. Civ. 03-227-B-C, 2005 WL 1412116, at *3 (D. Me. June 14, 2005) (citing Fed. R. Evid. 501); accord

Davine v. Golub Corp., No. Civ. 3:14-30136-MGM, 2017 WL 517749, at *2 (D. Mass. Feb. 8, 2017).  As aptly stated by the SEC, this court therefore "has no reason to prioritize D.C. Circuit law over the law of this Circuit."  (Docket Entry # 89, p. 5).

CONCLUSION

In accordance with the foregoing discussion, the motion to reconsider (Docket Entry # 79) is **DENIED**.


      /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge