UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br>     v.<br><br>NAVELLIER & ASSOCIATES, INC., and LOUIS NAVELLIER,<br><br>             Defendants. | Civil Action No. 17-cv-11633 |

### [PROPOSED] DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING PARTIAL SUMMARY JUDGMENT (DKT#259)

The SEC's "opposition" to Defendants' motion for reconsideration does not dispute that there was no evidence that the "based on live traded" and "not back tested" statements were false, as this Court improperly found. Therefore, reconsideration should be granted, and the summary judgment order should be vacated. Nor does the SEC dispute that this Court impermissibly weighed the disputed evidence regarding scienter, materiality, extreme recklessness, negligence, and the SEC's improper purpose to punish Defendants by selectively enforcing against them. Since it is manifest error for the Court to grant summary judgment when

1

there are material, factual disputes *Burns v Johnson* 829 F3d 1, 8 (1st Cir. 2017), this Court should reconsider and vacate its partial summary judgment decision.

1. **THE REQUIREMENTS FOR RECONSIDERATION- THE COURT'S MANIFEST ERROR OF FACT AND OR LAW, OR <u>MANIFEST INJUSTICE-</u> HAVE BEEN MET**

    A. <u>**No False Statements**</u>

The Court <u>assumed</u>, with <u>no evidence,</u> let alone undisputed evidence, that the two statements were "false". That was a manifest error of fact and a manifest error of law. The SEC was required to prove the two statements were "false". *ZPR Investment Management v SEC* 861 F3d 1239, 1247 (11th Cir. 2017) It failed to do so.

The SEC did not present any evidence in its summary judgment pleading that the two statements were false. Despite that absence of proof, this Court found the statements were false. The SEC now attempts to correct this Court's error by arguing that its Exhibit 3 containing its settlement agreements with F-Squared and other advisers was evidence that NAI's statements were false. But the SEC never made that argument in its summary judgment papers. It merely presented those settlements in an attempt to support its argument that Defendants were not similarly situated to the other settling Defendants. The SEC never suggested that the F-Squared settlement was evidence that the two NAI statements were false. Nor could it, because even an "admission" made by a non-party to the pending litigation as part of a settlement in another litigation cannot be admitted into evidence or used as evidence against a non-signator third party (NAI and Navellier). *Massachusetts Mutual Life Insurance Co. v DLJ Mortgage Capital* 251 F Supp. 3d 329, 332 (D. Mass 2017); Fed R. Evidence Rule 408.

In the Mass Mutual case, Mass Mutual moved for summary judgment against Credit Suisse based on admissions Credit Suisse made (that it made untrue statements in its marketing materials) as part of its settlement agreement with the Department of Justice. Another session of this Court ruled that Mass Mutual could not use those Credit Suisse "admissions" from the settlement because Mass Mutual was not a party to the settlement, on the other case. Likewise, the SEC cannot use F-Squared's supposed "admission" from its settlement in another case, as evidence in this case because Defendants were not parties to the F-Squared settlement, or the F-Squared/SEC litigation.

The F-Squared settlement also confirms that its "admissions" cannot be used as evidence in this case:

> [T]he findings herein are made pursuant to Respondents' [F-Squared's] offer and are <u>not binding</u> on any other person or entity in this or any other proceeding. (Emphasis and brackets added)
>
> (DKT#222-4, p. 2 of 112)

### B. <u>Defendants Presented Evidence That The Statements Were True</u>

Not only did the SEC fail to produce evidence that the NAI's statements were "false", NAI and Mr. Navellier presented testimony from Mr. Present (DKT#236-7, p.179 of 465) and written communications between Mr. Present and Mr. Morton (DKT#224-1, pp.190-1919 of 309) and Mr. Hoffstein (DKT#236-7, pp.199-203 of 465) and the NASDAQ OMX letter (DKT#224-1, pp.201-202 of 309) all confirming that the "live traded", "not back tested" statements were true.

The SEC's baseless argument, apparently relied on by this Court, that Defendants presented no evidence that the statements were true, is just more dissembling. The above

3

evidence is evidence that the statements were true. The SEC had the burden to prove, with undisputed evidence, that the statements were "false." It failed to do so.

The Court was misled by the SEC and manifestly erred in accepting the SEC's unsupported argument and disregarding Defendants' evidence. It is reversible error for the Court to weigh the disputed evidence. *SEC v EagleEye Asset Mgmt* 975 F. Supp. 2d 51, 158-159 (D. Mass. 2013); *Burnes v Johnson* supra

### C. True Statements Are Not Actionable

The SEC cannot show that there was undisputed proof that the statements were false, so the SEC resorts to misstating the law. Thus, the SEC attempts to distinguish the holdings in *In re Lululemon Securities Litigation* 14 F Supp. 3d 533, 571 (S.D.N.Y. 2014) and *Rombach v Chang* 355 F3d 164, 174 (2d Cir. 2004)- that a true statement is not actionable under the securities laws- by arguing that those cases were Rule 10b-5 cases, not 206(1) or 206(2) cases. But Rule 10b-5 and 206(1) and 206(2) have the common requirements that the allegedly violative statement must be false to be actionable. A true statement is not actionable under Rule 10b-5 [*Lululemon* supra; *Rombach* supra], nor is it actionable under 206(1) and 206(2). *ZPR Investment* supra 861 F 3d. at 1247 [§206(1) and §206(2) each require the SEC to show the investment adviser made a material misrepresentation].

The SEC cannot honestly be arguing that it did not have to prove, with undisputed evidence, that the two statements were false in order to obtain summary judgment on its Count One 206(1) fraud claim and its Count Two 206(2) negligence claim.

### D. <u>No Summary Judgment Motion For Breach Of Fiduciary Duty Claim</u>

The SEC further misleads this Court by arguing that *SEC v Capital Gains Research Bureau Inc.* 375 U.S. 180 (1963) somehow eliminates the requirement of a false statement to prove a 206(1) or 206(2) violation. It does not, especially for this summary judgment motion. Just so we are clear, this is not an omission of a material fact case. The SEC expressly limited its summary judgment motion <u>solely</u> to its argument that both Defendants violated 206(1) and 206(2) by making the two allegedly false statements in its marketing materials. (DKT#241, pp. 2 and 3) Therefore, it had to prove those two statements were false. The SEC disingenuously tries to divert attention from its failure to prove falsity by arguing that Defendants somehow breached their fiduciary duty or had a conflict of interest in making true statements. There is no "breach of fiduciary duty" or "conflicts of interest" involved in the SEC's partial summary judgment motion. There was no SEC summary judgment motion or briefing seeking to prove a conflict of interest or breach of fiduciary duty. This Court did not rule, nor could it, that Defendants omitted material facts or breached their fiduciary duties or had some conflict of interest. The SEC sought summary judgment only because it claimed that it was undisputed that Defendants "live traded" and "not back tested" statements were false. But the SEC failed to present evidence to prove those statements were false.

### E. The NASDAQ OMX Letter

The SEC asks this Court to stick with its erroneous decision because NASDAQ OMX supposedly did not "verify" the statements in its letter- that the F-Squared Index historical track record, (that NASDAQ OMX calculated), was based on an analytical engine (strategy) that a Private Wealth manager had applied to manage clients' assets since 2001. (DKT#224-1, pp. 201 and 202 of 309) The SEC erroneously claims that Mr. Hughes testified (in 2019) that NASDAQ OMX did not verify its statements. That was not his testimony.

The SEC states that NASDAQ OMX's representative "stated that NASDAQ OMX never verified AlphaSector performance or confirmed it was live traded." (Emphasis added by the undersigned) That is not what Mr. Hughes testified. (DKT #224-1 pp. 201-202) He was asked if the use of the word "historical" in the third bullet point on page 3 of his letter (DKT#224-1, p.201), (referring to the AlphaSector Index track record) meant that NASDAQ OMX had received any information that verified that the [Index] track record referred to in bullet point 3 (DKT#224-1, p. 201 of 309) had actually been the result of live trading." He said no. But the third bullet point in his letter was talking about the AlphaSector Index track record, not about the track record of the underlying Morton strategy *Id,* so he said "no." The historic hypothetical track record of the AlphaSector Index back to 2001, which NASDAQ OMX itself calculated, was not the result of live trading, because an Index track record is hypothetical and therefore doesn't make live trades, so an Index's track record of hupothetical trades; is not the result of live trading.

Mr. Hughes was not asked if NASDAQ OMX verified the "AlphaSector strategy performance" or if it verified whether the F-Squared AlphaSector strategy was live traded back

to 2001. No such statements were made by NASDAQ OMX or by Defendants. What NASDAQ stated and what NAI actually stated in its marketing brochures (for a short time (August 10, 2011- September 2012)) was that the <u>Wealth Manager strategy</u>, (that the F-Squared AlphaSector Index was based on,) was live traded back to 2001. (DKT#222-32, p. 6 of 9) Thus, the NASDAQ OMX letter is evidence that NAI's statements were true.

Moreover, even if *arguendo*, NASDAQ OMX did not "verify" that the AlphaSector Index was based on a live traded strategy, so what? That lack of "verification" would not be proof that the underlying Morton strategy was not live traded. All the evidence in the record is that F-Squared AlphaSector Index was based on the underlying (Morton) live traded strategy.

### F. This Motion Is Not A "Second Bite At The Apple"

The SEC argues that Defendants' motion for reconsideration of the Court's scienter- ("intent to defraud", "recklessness", "knowledge", "materiality") and selective enforcement determinations is just a repeat of its evidence and arguments opposing summary judgment. But that is the proper procedure for a reconsideration motion, when there has been a manifest error by the Court as to the facts or law. The purpose of a reconsideration motion is to point out material errors or the Court's "misapprehension" of the facts and arguments previously presented, so the summary judgment motion can be correctly decided and so the Court can fulfill its "duty to render just decisions." *Antony v Duty Free Americas Inc.* 705 F Supp. 2d 112, 114 (D. Mass. 2010)[1]

---

[1] The SEC's reliance on *Antony v Duty Free Americas Inc.* 705 F Supp. 2d 112 (D Mass 2010) does not support its contention that reconsideration should not be granted. There, unlike here, the movant did not point to any error in law or fact and did not support its conclusory claim that the Court improperly considered the evidence on a motion to dismiss. Here the Defendants point to specific instance where the Court improperly weighed the conflicting

As set forth in Defendants' opposition, sur-reply and exhibits in opposition to the SEC's motion for summary judgment (and in their reconsideration memorandum), there was ample evidence, especially when examining the whole of each exhibit and viewing the evidence in context (*Flannery* supra 810 F3d at 9), that the subject two statements were not made with any knowledge that they were false, that Mr. Navellier's rants were not based on any actual knowledge of falsity, but rather fabrications to diminish Howard Present and F2 whom he "hated." Nor were statements made with any intent to defraud or "extremely" recklessly (competent due diligence was done). Nor were the statements even material to potential investors, especially after August 10, 2011 (the time not barred by the statute of limitations), because investment advisers and clients didn't care about the 10 year old basis for the hypothetical performance of an Index. What they cared about was recent, <u>actual</u> performance of the strategy. (DKT#224-6, pp. 199-200) These are all disputed issues for a jury to decide.

The SEC presented no evidence of any client that claimed that the "live traded", "not back tested" statements were important to him/her/it in making a decision to use the Vireo strategy. There is no showing of materiality if the SEC does not present testimony from actual clients saying the allegedly false information was an important factor in his/her/its investment decision. *SEC v Flannery* 810 F3d 1 (1st Cir. 2015); *SEC v Phan* 500 F3d 895, 910 (9th Cir. 2007) Not only did the SEC fail to produce a single investor to testify that the live traded, not back tested statements were important, but its own attorney in this case, Mr. Baker, testified those 10 year old events regarding the basis for a hypothetical Index would not be material to investors in 2011 through 2013; they would be more interested in current, actual performance. (DKT#224-4

---

evidence as to the alleged "falsity" of the statements, alleged knowledge, alleged intent, alleged materiality, the existence of a settlement between the SEC and Defendants, and the SEC's bad faith purpose to punish Defendants.

pp. 471 of 583) The SEC also neglected to mention that the one investment adviser that it did interview, Ken Zanonni, (who advised numerous clients of his to use NAI's Vireo AlphaSector strategy), stated that pre-2008 hypothetical performance, or 2001 "live traded" or "isn't back tested" statements were not important to him in recommending Vireo to his clients. What was important to him and his clients was the post-2008 actual performance.

### G. Manifest Injustice

The Court's erroneous decision has also resulted in manifest injustice to NAI and to Mr. Navellier by unjustifiably holding them liable for violating 206(1) and 206(2), which they did not violate. That erroneous decision without undisputed evidence has deprived Defendants of their constitutional right to present their defenses to a jury. If left to stand, it will ruin their 40 year reputations and threaten their livelihoods, and those of NAI's employees. That erroneous decision has already reverberated in the investment advisory community, and has caused Defendants to lose additional clients and substantial business. It has emboldened the SEC to seek $30 million in unconscionable penalties in the form of unauthorized "disgorgement" when at most, actual "disgorgement" if allowed, would be under $500,000, for making two immaterial statements, which had no effect on NAI's clients' decisions to use NAI's Vireo AlphaSector Premium or Allocator strategies.

The SEC has twisted the "facts" and misled the Court as to the hotly disputed facts in this case, all in a "win at any cost" approach. SEC attorneys, like other government lawyers, are held to "*unusually high standards* of honesty, integrity, impartiality, and conduct." 17 C.F.R. §200.735-2(a) (emphasis added). They must refrain from any conduct that could "'affect[] adversely the confidence of the public in the integrity' of the government," 17 C.F.R. §§ 200. 735-3(a)(2)(iii) & (v)(2008), or that would undermine "the respect and confidence of their fellow

citizens." 17 C.F.R. § 200.53(b). These heightened obligations apply with particular force in civil enforcement actions, which are "akin to criminal prosecution in that [the SEC] is accusing [a] private individual of wrong-doing." *SEC v Heartland Advisors, Inc.,* No. 03-C-1427, 2006 WL 2547090, at *5 n.4 (E.D. Wis. Aug. 31, 2006) and is seeking multiple, huge penalties. "In such cases, the SEC acts as 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore… *shall win a case, but that justice shall be done.*'"

Here the SEC has not abided by those principles which has resulted in this Court being guided into an erroneous decision and an unjust result.

## CONCLUSION

Defendants' motion for reconsideration should be granted and this Court should vacate its February 13, 2020 partial summary judgment order.

Respectfully Submitted

Dated: March 30, 2020

By: */s/SamueLKornhauser*

Samuel Kornhauser
Law Offices of Samuel Kornhauser
155 Jackson Street, Suite 1807
San Francisco, CA
(415) 981-6281
skornhauser@earthlink.net

BROOKS & DeRENSIS

111 Devonshire Street, Suite 800

Boston, MA 02109
(857) 259-5200
sbrooks@bdboston.com

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this day of March 30, 2020.

                                        By: */s/ Dan Cowan*
                                                  Dan Cowan