UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>NAVELLIER & ASSOCIATES, INC. and<br>LOUIS NAVELLIER,<br>    Defendants. | Case No. 17-cv-11633-DJC |

**PLAINTIFF'S REPLY TO
DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT**

Defendants use much of their Opposition brief to argue that this Court cannot or should not order disgorgement and other remedies at this time. Defendants get the law wrong; the Court can and should now enter remedies, including disgorgement. Defendants also grasp at whatever they can to reduce disgorgement. But they do so by ignoring the case law on disgorgement, this Court's prior rulings, and the nature and underlying facts of their fraud. Because Defendants' Opposition misapplies law and fact and in many instances fails to provide any support for its arguments, the Court should grant the SEC's requested remedies.

**I.   The Court Can and Should Now Order Disgorgement**

Ignoring that this Court has already ruled that it "has discretion to enter an order of disgorgement" (ECF No. 252, p. 22), Defendants claim that this Court lacks that. The argument flies in the face of well-established First Circuit law. The First Circuit has held that courts have broad equitable power to prevent unjust enrichment by ordering disgorgement, *see SEC v. Happ*, 392 F.3d 12, 31 (1st Cir. 2004), and that statutory provisions authorizing civil penalties were meant to augment that authority. *See SEC v. Sargent*, 329 F.3d 34, 41 n.2 (1st Cir. 2003). The

First Circuit's recognition of this equitable disgorgement remedy in SEC cases is consistent with every other Circuit Court in the United States.[1]

Defendants insinuate that some other conclusion is required by *Kokesh v. SEC*, 137 S. Ct. 1635 (2017). *Kokesh*'s holding that disgorgement is a penalty for purposes of 28 U.S.C. §2462, does not undermine this Circuit precedent, or this Court's power to order disgorgement. *See, e.g.*, *SEC v. Metter*, 706 Fed. Appx. 699, 702 (2d Cir. 2017) (upholding disgorgement award after *Kokesh*); *SEC v. Jammin Java Corp.*, 2017 WL 4286180 at *2-4 (C.D. Cal. Sept. 14, 2017) (finding *Kokesh* clarified the scope of §2462 rather than "redefining the essential attributes of disgorgement"); *SEC v. Sample*, 2017 WL 5569873 at *2 (N.D. Tex. Nov. 20, 2017) (finding *Kokesh* "had no effect on how courts apply disgorgement principles").  Indeed, in another SEC enforcement case before the District of Massachusetts, the court faced the same challenge to its authority and concluded that "its equitable power to order disgorgement remains intact" after the *Kokesh* decision.  *See SEC v. Present*, 1:14-cv-14692-LTS, Docket Entry 385 (Order on Mot. for Final Judgment), p. 4; *see also SEC v. Bio Defense Corp.*, Civ. Act. No. 12-11669-DPW, 2019 WL 7578525, at *32 (D. Mass. Sept. 6, 2019) (awarding disgorgement post-*Kokesh*).

Nor should this Court hold its decision on disgorgement while the Supreme Court considers *Liu v. SEC* (S. Ct. 18-1501).  Defendants contend that *Liu* may change the law.  But, as detailed above, current law in this Circuit and every other holds that the Court can and should order disgorgement.  Even the Ninth Circuit, where *Liu* originated, has repeatedly held that while

---

[1] *See SEC v. Texas Gulf Sulfur Co.*, 446 F.2d 1301, 1307-08 (2d Cir. 1971); *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997); *SEC v. Gotchey*, 981 F.2d 1251, 1992 WL 385284 *2 (4th Cir. 1992); *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978); *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985); *SEC v. Lipson*, 278 F.3d 656, 662-63 (7th Cir. 2002); *SEC v. Ridenour*, 913 F.2d 515, 517-18 (8th Cir. 1990); *SEC v. Rind*, 991 F.2d 1486, 1490 (9th Cir. 1993); *SEC v. Maxxon*, 465 F.3d 1174, 1179 (10th Cir. 2006); *SEC v. Monterosso*, 756 F.3d 1326 (11th Cir. 2014); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989).

the *Liu* appeal is pending, courts have authority to order disgorgement in SEC actions. *SEC v. Liu*, 754 Fed. Appx. 505, 509 (9th Cir. Oct. 25, 2018; *SEC v. Weaver*, 773 Fed. Appx. 354, 356-57 (9th Cir. May 8, 2019); *SEC v. Hooper*, 769 Fed. Appx. 457, 458 (9th Cir. Apr. 30, 2019). Other courts have also recognized that, even after the Court granted certiorari in *Liu*, courts may continue to award disgorgement under existing precedent. *See, e.g., SEC v. Team Resources Inc.*, 2019 WL 5704525, at *1 (5th Cir. Nov. 5, 2019) (affirming disgorgement award notwithstanding certiorari grant in *Liu*, and noting that "even when the Supreme Court has granted certiorari in a relevant case, we will continue to follow binding precedent"); *SEC v. de Maison*, 18-2564 (2d Cir.) (orders dated November 14, 2019 and November 19, 2019) (denying motion to hold a rehearing petition challenging disgorgement in abeyance pending *Liu*, and subsequently denying the rehearing petition). The District of Massachusetts has followed suit. *SEC v. Cody*, Civ. Act. No. 16-cv-12510-FDS, 2019 WL 6619195, *4-5 (D. Mass. Dec. 5, 2019) (ordering disgorgement after grant of certiorari in *Liu*). This Court does not need to defer. The time has come to set disgorgement, penalties, and injunctions, and Defendants' mischaracterization of precedent should not delay that process.[2]

## II. The Court Should Disregard Material that Violates Rule of Evidence 408

Statements purportedly made during settlement negotiations are not admissible to prove the amount of a disputed claim. Fed. R. Evid. 408. Throughout their Opposition, Defendants use settlement statements and purported statements to argue that the Commission has somehow

---

[2]Defendants also argue that the Court should reserve its decision until the First Circuit decides Defendants' appeal of the summary judgment order, despite Defendant's own admission that their appeal is premature. (ECF No. 274.) The SEC has moved to dismiss Defendants' First Circuit appeal as premature because there is no final judgment in this case. This Court retains jurisdiction to decide remedies and should not hold off that decision despite Defendant's appeal. *Hodgson v. Mahoney*, 460 F.2d 326, 328 (1st Cir. 1972) ("While filing a notice of appeal generally deprives the district court of jurisdiction, where," as here, "the notice is manifestly deficient, e.g. by reason of reference to a nonappealable order, the district court may disregard it and proceed with the case").

conceded a maximum penalty number and disgorgement deductions, discounts, and exclusions (including of the sale price of Vireo and a large percentage of the management fees earned from their fraudulent scheme). Ds' Opp., pp 8-9. In addition, the Kahrs expert report repeatedly uses settlement communications (or assumptions purportedly derived from settlement communications), in violation of Rule 408, as a basis for disgorgement discounts and removing Vireo sales proceeds from disgorgement. *E.g.,* Kahrs Report, ¶¶18-19 (using settlement communications as a basis for falsely asserting the Commission has "conceded" various discounts and adjustments to disgorgement). It is improper under Rule 408 to use the negotiations (which predate this litigation, concern only one of the Defendants, and contemplate different charges), as evidence in this Court. The Court should disregard these arguments and sections of the Kahrs Report.

### III. The Court Should Not Rely on Defendants' Expert

The day after the due date for their remedies brief, Defendants submitted the first of three "errata" introducing new material on damages (ECF No. 278).[3] This "errata" contained the report of Henry Kahrs, who purports to be an expert (Kahrs Report, ¶1) giving his "professional opinion" (*e.g., id.*, ¶12). Defendants never disclosed their retention of an expert and never provided this expert report to the Commission.[4] Nor does this expert report contain most of the items that would accompany an expert report to establish the basis of the opinions and the potential biases of the expert: no curriculum vitae or resume, no disclosure of compensation, no

---

[3] On April 23 and 24, Defendants filed two additional 89-page pleadings which contained additional briefing, supporting Declarations and spreadsheets. Defendant files these under the guise of "errata sheets," though they clearly add to the brief instead of correcting it.

[4] To be clear, the Commission is not asking for and does not want to depose the expert now, or to otherwise retreat into expert discovery. To do so would only reward Defendants with the delay they seek.

list of materials relied upon, no list of other engagements, and no list of testimony previously given.  The Report gives no indication what materials Mr. Kahrs is relying on for his report calculations and spreadsheets.  As a result, the court should disregard the report, or at least the parts that are unsourced expert opinions.  This includes ¶12 (giving his "professional opinion" on the legal issue of whether taxes paid should be deducted from disgorgement), ¶¶13-17 (opining on the not-relevant topic "business valuation" and criticizing SEC accountant Rory Alex for not relying on "peer-reviewed analyses of typically seen in disgorgement of profits and business valuation analyses" [*sic*]), ¶21 (discussing customers' option to leave Navellier and opining on why they stay (without citation to any evidence or analysis), and ¶22 (opining on "reputational damage" to Navellier, again without support).[5]  Without any roadmap to what Mr. Kahrs is relying on or how he reached his calculations, how can the Court rely on his report?

## IV.   Defendants' Disgorgement Discounts are Contrary to Law and Fact

Defendants and their expert try hard to cut down the disgorgement number by eliminating Vireo products that are part of this case, deducting unrelated expenses and taxes, cutting short the relevant time period, applying across-the-board discounts without basis, and (astonishingly) claiming a disgorgement offset for investment profits made by their clients.  None are proper offsets to disgorgement, either legally or under the facts of this case.

### A.   Defendants' Damages Calculation Erroneously Limit Disgorgement to Only Two of the Vireo Products

Defendants have repeatedly and unsuccessfully tried to limit this case to only two of the

---

[5] The Commission does not object to the submission of a declaration that would summarize voluminous material (such as financial statements) and/or perform math on the information in the material.  That is the purpose of the Alex Declaration, submitted by the Commission.  ECF No. 263-1.  But the submission of undisclosed expert material, without disclosure and well after the time for discovery has closed is abusive and should be disregarded.

Vireo AlphaSector strategies, and they do so again here without supporting reference or citation.[6] (Ds' Opp., p. 8.)  Their expert also relies on the assumption that disgorgement should be limited in this way (without explanation) to reduce dramatically the amount of disgorgement. Kahrs Report, ¶3b (and limitations and deductions throughout the report).  This Court apparently did not give credence to Defendants' argument in its summary judgment ruling (ECF No. 25, pp. 21-23).  Nor did the Magistrate Judge when Defendants unsuccessfully made this same argument there. (ECF No. 209.)  And, the Commission's summary judgment motion included evidence relating to the strategies that Defendants seek to exclude. (*E.g.*, ECF Nos. 222-31 (P's Ex. 29), 222-39 (P's Ex. 37).  Defendants provide no factual or legal basis to limit disgorgement to only two strategies.  So disgorgement should be on fees from, and the sale of, all the Vireo strategies.

**B.    Business Expenses and Taxes Should Not Be Deducted From Disgorgement**

Defendants (via the Kahrs Report) deduct business expenses from NAI's ill-gotten gains without citing any basis for doing so. *Id.* at 5-7.  But the "overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses." *SEC v. Team Res. Inc.*, 942 F.3d 272, 275 (5th Cir. 2019); *see also SEC v. Liu*, 754 F. App'x 505, 509 (9th Cir. 2018) (upholding imposition of "gross pecuniary gain"); *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006) (same).  Nor should taxes be deducted. *SEC v. Merchant Capital, LLC,* 2012 WL 3205543 (11th Cir. Aug. 7, 2012) (holding that the district court was not required to take into account the

---

[6]Defendants' attempt to limit at summary judgment: *see* D's Mem. for Summary Judgment, ECF No. 224, pp. 34-35 and the Commission's Opposition, ECF No. 231, pp. 15-16 (demonstrating inclusion of all Vireo AlphaSector products in scheme, and detailing Defendants' earlier unsuccessful arguments to the Magistrate Judge to limit discovery on this basis). Defendants' attempt to limit in discovery: *see* Commission's brief, ECF No. 194 at pp. 3-4; Order of Magistrate Judge Bowler, ECF No. 209.

6

amount of taxes defendants paid on the amounts disgorged).  In Massachusetts, courts generally do not offset business expenses.  *See SEC v. DFRF Enterprises, Inc.*, 384 F. Supp. 3d 129 (D. Mass. 2019) (ordering disgorgement of gross pecuniary gain).

The Commission's disgorgement calculation (Alex Decl., ECF No. 263-1, ¶7) already deducts the portion of fees which NAI paid to F-Squared as part of that contractual relationship, crediting Defendants with cost of actually licensing the strategy.  *SEC v. Universal Express*, 646 F. Supp. 2d 552, 564 (S.D.N.Y. 2009).  Deducting this $12 million for the strategy licensing fee leaves $8,450,952 of the fees charged to investors for the Vireo AlphaSector products.  No further deductions to disgorgement for business expenses are appropriate.

    C.    **Disgorgement Calculations Should Not End in September 2012**

Defendants and their expert cut off disgorgement in either June 2012 or September 2012.  The Kahrs Report and Defendants' Memo state that the SEC has "agreed that the last date any alleged false advertising was used was September 30, 2012" based on a misrepresentation of irrelevant settlement communications improperly submitted to the Court in violation of Fed. R. Evid. 408.  Kahrs Report, ¶3.  Defendants also argue that the fraud "ended after NAI started managing their money."  Ds' Opp., p. 8.  Not so.  The SEC presented undisputed evidence that the marketing of Vireo products as live traded did not stop before the sale of Vireo.  SEC's Statement of Undisputed Material Fact, ECF No. 222, ¶¶42, 46 (detailing admissions of Navellier sales staff that their representations that the strategy had been live traded back to 2001 did not change over time, and that the sales staff knowingly sent out old marketing materials containing these misrepresentations).  And Defendants never corrected their fraudulent misrepresentations, causing fraudulently-induced clients to continue to pay management fees until Defendants sold their accounts.  As Navellier's fraudulent sales practices continued through

the sale of Vireo and Defendants failed to correct their misrepresentations, Defendants' early disgorgement cutoff has no factual basis. All fees and all sale proceeds are related to the fraud and are not "purely new matter" as defined in *SEC v. MacDonald*, 699 F. 2d 47, 54 (1st Cir. 1983), so the Court should order $22,450,952 in disgorgement, as calculated by the Commission.

### D. No Basis for Applying 50% and 75% Discounts to Disgorgement

Defendants invent another "concession" using Rule 408-excluded settlement communications: that the SEC has purportedly conceded that the fees should be discounted by 50% in 2011, and 75% in 2012. Ds' Mem., p. 9. Kahrs also relies on this "concession" as one of his assumptions (Kahrs Report, ¶18), and his calculations are flawed as a result.

The Kahrs Report also relies on a portion[7] of a consulting report submitted by Howard Present as part of his Wells Submission and again as part of his Opposition to the SEC's Motion for Final Judgment in *SEC v. Present*, No. 14-cv-14692-LTS and claims the SEC confirmed the theory used in this report. ECF No. 278 p.7. Not only did the SEC not confirm the "theory" used in this report, the SEC's expert in that case, Chyhe Becker, found it to be fundamentally flawed. *SEC v. Present*, No. 14-cv-14692, ECF No. 365 p 4. & 365-1.

Defendants and their expert base their application of across-the-board discounts for 2011 and 2012 on the idea that the 2001-2008 performance track record would be less important to clients over time. Defendants argue that the investment return (performance) from a prior period (2001-2008) becomes less important as time moves forward (into 2011-2013) and new investment returns are earned. While this may be true, it misses the point. The fraudulent misrepresentations about which the Court entered summary judgment are not about how much a

---

[7] Defendants, without explanation, appear to have only filed a portion of this report.

dollar invested in the Vireo AlphaSector strategies earned from 2001 to 2008.  Defendants' fraud was about the *risk* of the investment.  Vireo clients paid fees to NAI for a strategy to protect them from catastrophic market losses, a strategy that had been "stress tested" with real money "during two bear markets" (ECF No. 252 at p. 16).  Though the amount clients care about actual investment *returns* from five or ten years earlier may diminish over time, the amount they care about the risk relative to their principal investment does not.  To illustrate, imagine you buy a used car and the dealer represented what gas mileage the car used to get.  The amount you care about that historical gas mileage might diminish over time, as you drive the car yourself and have your own experience with the gas mileage (though you might still care if the dealer lied to you to get you to buy the car).  Now imagine that, instead, the dealer lied about whether the air bag in the model you purchased actually deployed in previous crashes.  The amount you care about that lie does not diminish over time, because you still care what will happen if you have a crash today.  Because Defendants' fraud centered on the risk of the investment (whether it would work as an "air bag" in a market crash), clients would not have disregarded Defendants' misrepresentations about the investment's experience with that risk as time moved forward.[8]  Thus, no discount should be applied to disgorgement from 2011 and 2012.

E.      **Defendants Cannot Offset Disgorgement with Client Investment Profits**

Defendants' argument that the Court should offset disgorgement by the amount of investment gains is nonsensical, and without any support in the law.  Defendants didn't get less

---

[8] The portion of the NERA expert report submitted by Defendants at ECF 277-1 actually supports this.  The "academic literature consistently shows that there are a variety of drivers of net flows into mutual funds [i.e., clients investing] other than lagged historical returns.  These include measures of fund volatility … fund family characteristics" and "fund marketing efforts."  ECF 277-1, Ex. 1, ¶¶10 & 6.  These are the investment characteristics that Defendants fraudulently misrepresented.

ill-gotten gains because clients made money in an unprecedented bull market. In fact, they got more ill-gotten gains, because the fees were based on client assets. Investment returns are not money returned to the victims by the fraudsters. Had those clients (and the investment advisers or brokers advising them) not been fraudulently induced to invest in Defendants' Vireo products, they could have gone to another investment adviser, also made money, and actually received the fiduciary duties they had purchased. Defendants want a world where you can keep the profits of your fraud as long as your clients made more money (on the investment of their own money) than you did from your fraud. That's not what the securities laws are for.

Defendants do not cite any case law that supports their position; instead, they cite two Texas district court cases, *SEC v. Mapp* and *SEC v. Sample*. In *Mapp*, the court did not order disgorgement of the defendants' total compensation because the SEC did not connect that compensation to the violation. 2018 WL 3570920, Civ. No. 4:16-CV-00246, 2018 WL 3570920, *8 (E. D. Tex. July 25, 2018). In contrast, Defendants Vireo-based fees and sale proceeds all result from their fraud. In *Sample,* the Court reduced disgorgement by the amount defendant had already paid in victim restitution. Civ. No. 3:14-CV-1218-B, 2017 WL 5569873, *2 (N.D. Tex, Nov. 20, 2017). Defendants have not offered any evidence that they reimbursed investors some portion of their fees, so *Sample* does not apply.

The idea that victims weren't harmed because they made money on their investment—as Defendants argue strenuously—demonstrates that Defendants still don't understand what they did. Defendants fail to realize that they contracted to fulfill duties of honesty (telling clients the truth about their investments), loyalty (putting client interests first, over Defendants' profits), and full disclosure of conflicts of interest (telling clients you are selling them to your co-fraudster to avoid liability for the fraudulent product you sold them), in exchange for fees from the clients.

Clients held up their end of that contract; Defendants did not.  So Defendants should disgorge the fees they didn't earn and the proceeds of the sale of assets (the client relationships) they gained through dishonesty.

V.     **Defendants' Arguments against Injunctive Relief and Penalty Merely Try to Relitigate Summary Judgement**

Defendants' arguments that the Court should not impose an injunction or a penalty reduce to three principle points:  1) Defendants honestly believed the statements were true and there's no evidence of a fraud or false statement; 2) Defendants have suffered enough; and 3) the Defendants are not repeat offenders.  The first is an attempt to have the Court reconsider liability in this case which has now twice been rejected.  The second is not one of the factors recognized under the case law.  *See* Order (ECF No. 252), p. 21 (citing *SEC v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003).  The third ignores the facts that Defendants were "warned [by the Commission] of previous violations on at least three occasions" relating to failures to disclose backtesting. (Order, pp. 3, 10) and that they engaged in a multi-year fraud with many separate fraudulent acts and misrepresentations to thousands of investors culminating in selling those clients rather than telling them the truth.  Since Defendants have not provide any mitigating evidence, the Court should enjoin the Defendants from future violations of the securities laws and order each Defendant to pay the appropriate third-tier penalty.

## **CONCLUSION**

For the reasons set forth above and in the SEC's original pleadings, the Court should enter a final judgment against the Defendants that: (a) permanently enjoins them from future violations of the Advisers Act; (b) requires them to pay, jointly and severally, disgorgement of

$22,450,952, and prejudgment interest in the amount of $6,513,619,[9] for a total of $28,964,571, and (c) requires each Defendant to pay an appropriate third-tier civil penalty.

> Respectfully submitted,
>
> SECURITIES AND EXCHANGE COMMISSION
> By its attorneys,
>
> /s/ Jennifer Cardello
> Jennifer A. Cardello (Mass. Bar No. 657253)
> Marc J. Jones (Mass. Bar No. 645910)
> William J. Donahue (Mass. Bar No. 631229)
> Robert B. Baker (Mass. Bar No. 654023)
> Attorneys for Plaintiff
> SECURITIES AND EXCHANGE COMMISSION
> 33 Arch Street, 24th Floor
> Boston, MA  02110
> (617) 573-4577(Cardello)
> cardelloj@sec.gov

Dated:  April 29, 2020

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed on April 29, 2020, through the ECF system and will be sent to the registered participants as identified on the Notice of Electronic Filing (NEF) as of the date of this filing.

> /s/ Jennifer Cardello
> Jennifer Cardello

Dated:  April 29, 2020

---

[9] Defendants also argue for a reduction of prejudgment interest to begin with the filing of the Complaint without any support for their calculation of $228,856.  Absent a delay in entering judgment that is not the fault of Defendants, district courts have granted prejudgment interest from the time of ill-gotten gains.  *See SEC v. Spencer Pharm.*, Civ. No. 12-CV-12334-IT, 2015 WL 5749436, at *7 & No. 6 (D. Mass Sept. 30, 2015).