# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                 Plaintiff,<br><br>   v.<br><br>NAVELLIER & ASSOCIATES, INC. and LOUIS NAVELLIER,<br><br>                 Defendants | Civil Action No. 17-cv-11633 |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY (DKT#284) LEAVE TO FILE REPLY GRANTED 5/18/20 (DKT#290)

A stay should be granted because this Court has no jurisdiction to proceed due to the appeal to the First Circuit. The SEC has erroneously moved to dismiss the appeal. Contrary to the SEC's argument, it is for the First Circuit, not this Court, to decide if this Court has been divested of jurisdiction by the appeal. *U.S. v. George* 841 F3d. 55, 71-72 (1st Cir. 2016)

Even if *arguendo* this Court did still have jurisdiction to decide remedies (it doesn't) it should exercise its discretion and stay any determinations (including remedies) pending the Supreme Court's decision in the <u>Liu v. SEC</u> 140 S. Ct. 451 (2019); *Liu v. SEC* 2019 WL 2354737 (May31, 2019) case. The <u>Liu</u> case will decide the legal issue of whether the SEC is legally authorized to seek and be awarded "disgorgement" in civil cases for violation of the securities laws- the very "remedy" the SEC is asking this Court to award it. It makes no sense for this Court to proceed to decide whether the SEC is entitled to disgorgement when the Supreme Court is currently deciding that issue. The SEC is asking this Court

to commit legal error by awarding "disgorgement" when it is likely the Supreme Court will again rule

that disgorgement is a penalty, not a remedy, and therefore the SEC cannot be awarded disgorgement.

Such an erroneous award would cause irreparable reputational and economic harm to Defendants and

could jeopardize Defendants' ability to exercise their appellate rights to correct such an erroneous award

and the underlying summary judgment.

Numerous other courts in this situation, where a higher court is deciding the law on the very

issue before the court, have wisely exercised their discretion and stayed a determination until the higher

court decides that controlling issue. *Marshel v. AFW Fabric Corp.* 552 F2d. 471, 472 (2nd Cir. 1977);

*Beydoun v. Holder* 2015 WL 631948 at *3-4 (E.D. Mich. Feb. 13, 2015); *Amazing Raisins v. Ocean*

*Spray Cranberries, Inc.* 2008 WL 1151084 at *1 (D. Mass. Aug. 8, 2008)

## ARGUMENT

### I.      THE NOTICE OF APPEAL DIVESTED THIS COURT OF JURISDICTION TO PROCEED FURTHER

The SEC's assertion that this Court can ignore the filing of an appeal and continue to

exercise jurisdiction including deciding whether to award "remedies," if any, is simply wrong.

Once the appeal was filed, after all liability claims had been resolved, this Court was divested of

jurisdiction to proceed to determine whether to award remedies or make any other substantive

rulings. *United States v. George* 841 F3d. 55, 71-72 (1st Cir. 2016):

> The district court made clear… that forfeiture
> remained an open, unresolved issue, and took no
> position as to whether forfeiture would be ordered at
> all. Under these circumstances, the pendency of the
> appeal deprived the court of jurisdiction to issue its
> amended judgment.

*Accord, Griggs v. Provident Consumer Discount Co.* 459 U.S. 56, 58 (1982).

It is for the Court of Appeals, not this Court, to decide if it has appellate jurisdiction. *United States v. George* supra 841 F3d. at 71-72; *United States v. Brooks* 145 F3d. 446, 456-457 (1st Cir. 1998). The SEC has moved to dismiss the appeal, making the same arguments it makes here in opposing Defendants' motion to stay. This Court has no jurisdiction to decide whether the notice of appeal is proper, especially when that very issue is currently pending before the First Circuit on the SEC motion to dismiss this appeal. (See Exhibit A attached hereto.) This Court and the First Circuit should not both be deciding the issue of appellate jurisdiction. *U.S. v. Brooks* supra 145 F3d. at 456 ["notice of appeal divests a district court of authority to proceed with any matter touching upon, or involved in the appeal." (citation omitted)… [i]t derives from the notion that shared jurisdiction almost always portends a potential for conflict and confusion."] That is why the First Circuit in *Brooks* held that it was error for the "district court to inexplicably insist [    ] on commencing the trial after he had notice of the government's appeal…" and why its decisions after notice of appeal were "nullities." *Brooks* supra 145 F3d. at 457

The SEC's reliance on *United States v. Mala* 7 F3d. 1058 (1st Cir. 1993) is misplaced. In <u>*Mala*</u>, unlike the present case, the appellant appealed an interlocutory order denying defendants' motion to suppress evidence prior to trial. After trial the Court of Appeals held that the defendant "did not identify then, nor has he identified now, any jurisdictional hook on which his appeal arguably might hang" and dismissed the initial appeal. That is not our case. Here the Navellier defendants have identified several grounds for appeal. First, the summary judgment together with the judgment dismissing Counts Three and Four with prejudice (DKT#'s 260 and 266) constitutes a final judgment from which an appeal can be taken, even without a decision on remedies *Mills v. Electric Auto-Lite Company* 296 U.S. 375, 379 n.3 (1970); *United States v.*

*George* supra 841 F3d. at 71-72 especially when the "remedy" sought by the SEC is not a "remedy" this Court can even award. *Kokesh v. SEC* 137 S. Ct. 1635, 1644 (2017); *Liu v. SEC* 140 S. Ct. 451 (2019); *Liu v. SEC* 2019 WL 2354737 (May 31, 2019)

Second, the First Circuit Court of Appeals has appellate jurisdiction over this appeal pursuant to 28 U.S.C. §1292(a)(1)- an immediate appeal from an interlocutory order which has the serious effect of granting or refusing an injunction. *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment and Allied Industries Fund* 967 F2d. 688, 690 (1st Cir. 1992) [the order of the district court might have a serious consequence and the order can be effectively challenged]; *Carson v. American Brands, Inc.* 450 U.S. 79, 84, 101 S. Ct. 993, 997, 67 L. Ed 2d. 59 (1981); *SEC v. Citigroup Global Markets Inc.* 752 F3d. 285, 293 (2nd Cir. 2014)

Even if *arguendo* this Court's orders are not a final judgment (they are), the First Circuit still has jurisdiction to consider this appeal pursuant to 28 U.S.C. §1292(a)(1) because the effect of this Court's orders was to refuse to grant Appellants injunctive relief by refusing to enforce the settlement and dismissing the SEC's claims against Appellants, including the SEC's claim for injunctive relief to bar Defendants in the future from violating the Investment Advisers Act as a predicate for lifetime bans from the securities industry.

The essence of the selective enforcement allegations were to enjoin the SEC from pursuing this action since these claims had been settled pursuant to a settlement agreement. Granting summary judgment, dismissing the selective enforcement claim, had the effect of refusing to order enforcement of the settlement agreement. That is the equivalent of denial of injunctive relief, which refusal is an appealable order. *SEC v. Citigroup Global Markets Inc.* 752 F3d. 285, 293 (2nd Cir. 2014). In *Citigroup* the SEC and Citigroup also reached a settlement agreement whereby Citigroup agreed to not engage in violation of the Securities Act and to take

steps not to engage in securities fraud in the future. The district court refused to approve the settlement, in part because it felt an injunction to obey the law was not sufficient. The district court ordered the parties to trial. The SEC sought an interlocutory appeal pursuant to 28 U.S.C. §1292(a)(1) which the Court of Appeals allowed because the effect of the court's denial of the request to approve the settlement was to deny enforcement of a settlement which would cause irreparable harm in forcing the parties to trial.

Here this Court's denial of summary judgment as to Defendants' selective enforcement had the effect of refusing to enforce the settlement and forcing continuation of this enforcement litigation against Appellants.

The First Circuit has likewise held that an appeal from an interlocutory order, which might have a serious, perhaps irreparable consequence and which order can be effectively challenged, confers appellate jurisdiction pursuant to 28 U.S.C. §1292(a)(1). In *Manchester Knitted Fabrics Inc. v. Amalgamated Cotton Garment and Allied Industries Fund* 967 F2d. 686, 690 (1st Cir. 1992) the district court refused to order an employer to contribute to a retirement fund for the benefit of employees. The fund appealed and the First Circuit held that although the court did not specifically grant injunctive relief, the effect of the district court's order refusing to order the employer to contribute was injunctive which had the serious consequences of possibly depriving employees of future benefits.

Here, too, the effect of this Court's erroneous summary judgment order not only forces the Defendants to continue to litigate claims that have already been settled, but improperly exposes Defendants to $28 million in factually unsupported and legally unauthorized disgorgement when no disgorgement is authorized, or, even if disgorgement was legally allowed, disgorgement could not exceed $228,856 (DKT#277, p. 9). Not staying proceeding could also

effectively deprive Defendants of the opportunity to fairly appeal the summary judgment

decision (where this Court improperly decided disputed material issues of fact (*Noonan v.*

*Staples, Inc.* 556 F3d. 20, 25 (1st Cir. 2009)). A huge, legally and factually unsupportable

disgorgement award, when the Supreme Court could well rule that no disgorgement amount is

allowed, (and when the SEC itself has agreed that $369,000 is the proper "disgorgement"

amount) would make it extremely difficult, if not impossible, for Defendants to post an appeal

bond to pursue the appeal, thereby irreparably harming Defendants by possibly depriving them

an opportunity to appeal erroneous decisions. Defendants believe the SEC is purposely opposing

a stay (and the pending appeal) in order to induce this Court to rush to issue a huge, unsupported

and legally unauthorized disgorgement award before the Supreme Court rules disgorgement is

not authorized. The SEC knows the $28 million in disgorgement it seeks is not a legally

authorized remedy and is far in excess of the $228,856 maximum it could possibly be entitled to

if any disgorgement was legally authorized. The SEC is opposing a stay in the hope of inducing

this Court to award an unauthorized amount so large as to make it financially difficult, if not

impossible, as a practical matter for Defendants to appeal the erroneous summary judgment, i.e.,

the SEC seeks to effectively avoid review of the erroneous summary judgment it obtained.

### A.  No Stipulation For Retained Jurisdiction

The SEC next incorrectly argues that this Court somehow retains jurisdiction after notice

of appeal is filed because the undersigned stated in a letter that Defendants' filing of the notice of

appeal was precautionary. Aside from mischaracterizing the purport of the letter, the Defendants

cannot (and did not) stipulate to this Court retaining jurisdiction to decide whether to award

remedies.[1] The parties cannot (and the letter did not) stipulate to retained jurisdiction by this Court. *United States v. George* supra 841 F3d. at 71-72. ["Although neither party challenges the district court's jurisdiction to enter its forfeiture order, we [the Court of Appeals] have an independent obligation to explore that issue." … The district court made clear… that forfeiture remained an open, unresolved issue and took no position as to whether forfeiture would be ordered at all. Under these circumstances the pendency of the appeal deprived the court of jurisdiction to issue its amended judgment awarding forfeiture." Here too this Court left open whether it would award remedies "at all" (DKT#253). The notice of appeal divests this Court of jurisdiction to award any remedies.

## II.      THIS COURT SHOULD STAY ANY DECISION ON DISGORGEMENT "REMEDIES" UNTIL THE SUPREME COURT DECIDES THE ISSUE

Even if this Court has retained jurisdiction to decide whether to award remedies, it should stay any decision until the Supreme Court decides the crucial predicate issue of whether this Court can even award disgorgement (in any amount) let alone the $28 million the SEC seeks. Incredibly the SEC is insisting that this Court possibly commit serious legal error by proceeding to decide to award disgorgement when the very issue, of whether disgorgement can even legally by awarded in an SEC civil enforcement case, is presently under submission by the Supreme Court. It makes no sense for this Court to decide that legal issue when the Supreme Court may well decide that disgorgement is not a remedy that the courts can award. Or even if

---

[1] The undersigned's letter to this Court was not a concession that the appeal was improper. The letter was meant to notify this Court that an appeal had been taken, that Defendants were not trying to circumvent this Court's remedies briefing, but rather, given the SEC's past modus operandi of taking questionable positions, Defendants' (counsel) was concerned that the SEC might take the position that a notice of appeal filed more than 60 days after the summary judgment order would be untimely. Defendants' counsel did not want to risk not filing opposition to the SEC's motion for remedies (even though this Court was divested of jurisdiction to make any remedies ruling) in the event this Court proceeded to make a decision on "remedies."

"disgorgement" can be awarded, whether it must be equitably limited to a form of restitution or recission so the parties are returned to the status quo prior to the violation, with a return to the "victims" of the amount, if any, they lost (offset by their gains) to restore the status quo.

It would be imprudent and an enormous waste of time, effort and judicial resources and would irreparably harm Defendants, for this Court to render a possibly incorrect remedies decision without knowing the correct law to apply. If this Court proceeds to rule and awards disgorgement, in any amount, and the Supreme Court issues its decision in *Liu* that disgorgement is not a remedy, then this Court will have needlessly committed reversible and possibly irreparable error. That decision would have to be relitigated and corrected, applying the correct law; but by that time it might be too late to correct that error and the summary judgment error. The prudent, correct and fair course of action is to stay any decision until the Supreme Court rules and sets forth what the law is. That is what the courts have done when, as here, a controlling issue of law is being determined by a higher court.

The SEC's anemic attempt to distinguish the decisions of other courts that have stayed deciding issues where a higher court was deciding a controlling issue, is without merit. Contrary to the SEC's assertions, the cases cited by Defendants are on all fours. In *Marshel v. AFW Fabric Corp.* 552 F2d. 471, 472 (2nd Cir. 1977) the Second Circuit directed the district court to stay any decision on whether to award damages to plaintiffs for defendants' violation of Rule 10b-5 until the Supreme Court, in a case then pending before it, ruled on the legal issue of whether there was any shareholder private right of action for damages under Rule 10b-5.

Likewise, in *Bechtel Corp v. Local 215 Laborer's Intn'l Union* 544 F2d. 1207, 1215 (3rd Cir. 1976); *Beydoun v. Holder* 2015 WL 631948 at *3-4 (E.D. Mich. Feb. 13, 2015); *Momenta Pharmaceuticals v. Amphastar* 323 F. Supp. 3d. 142, 147 (D. Mass. 2018) the courts all stayed

action pending decision by another court that had a controlling impact on the subject court's

decision. See also *Amazing Raisins v. Ocean Spray Cranberries Inc.* 2008 WL 11510854 at *1

(D. Mass Aug. 8, 2008) [district court stayed its decision whether to award attorney fees after its

grant of summary judgment pending decision by Federal Circuit Court as to the validity of its

summary judgment].


III.     DEFENDANTS' HAVE MET THE CRITERIA FOR A STAY

Contrary to the SEC's argument, Defendants have met the criteria for a stay. As set forth

above, the pendency of the *Liu* case which would control whether this Court has authority to

award disgorgement remedies is, alone, reason to stay this action. So is this Court's lack of

jurisdiction. So is the prudence in staying a decision on whether to award any remedies until the

First Circuit decides whether the summary judgment order was even proper- if it was not, then a

stay will conserve judicial resources. *Amazing Raisins* supra at *1.


A.  **Likelihood of Success**

Contrary to the SEC's argument, there is a strong possibility of success on appeal, i.e.,

that the summary judgment order will be vacated because there was no evidence, let alone

undisputed evidence, that the two allegedly "false" statements in NAI's marketing materials

were in fact false. The evidence in the record was that the statements were true. Likewise, the

evidence was at least in dispute as to whether Defendants knew the two statements were untrue

or that they acted with scienter or negligently. (Defendants presented evidence that they

reasonably believed the statements to be true, especially in light of the NASDAQ OMX letter;

that they did not intend to defraud clients; that the statements taken in context were not material and that they did not act negligently in their due diligence. See DKT# 284, pp. 5&6.

It is highly likely that First Circuit will reverse the summary judgment order because it was simply reversible error for this Court to decide those disputed, material, factual issues. *Burns v. Johnson* 829 F3d. 1, 8 (1st Cir. 2017)

### B.  Irreparable Harm

The SEC argues that a decision on remedies will "help" Defendants by making the decision appealable. The SEC is wrong. The summary judgment decision is already appealable. As set forth above, an erroneous remedies decision before the Court knows the law on disgorgement will cause Defendants irreparable harm, and as a practical matter could effectively deprive Defendants of the ability to appeal it and the summary judgment. While this Court could order a reduced bond or no bond or alternate security, there is no assurance it would, and it would needlessly require more time, expense and briefing, all of which would be eliminated pending Supreme Court and First Circuit Court decisions.

### C.  Balance of Equities

Contrary to the SEC's argument, the balance of equities favors a stay. A stay until the correct law is established outweighs the lack of harm to the SEC. The SEC's claim, that the interests of the clients and the SEC's ability to police "fraud" are reasons to deny the stay, is meritless. The clients are not harmed by a stay because they suffered no harm- they made over $278 million in profit (DKT#277, p. 5). The SEC isn't going to (and couldn't) return any disgorgement monies to the clients because the clients suffered no harm. The SEC intends to

keep any disgorgement. So a stay doesn't harm NAI's clients. Nor does a stay inhibit the SEC's ability to "police." If ultimately the SEC can prove to a jury that Defendants committed violations and the Supreme Court rules that disgorgement is a remedy and not a penalty, the SEC will then be able to properly "police" Defendants.

### D.  **Public Interest**

The public interest in the "integrity of the securities markets" is not harmed by a stay. To the contrary. NAI stopped advising clients using the AlphaSector strategies in September 2013. A stay so that there is a correct resolution of the case, based on an application of the correct law, is what is in the public interest. It is in the public interest and in the interests of justice that the Court wait for the correct law to be established so a correct decision can be made.

## REQUEST FOR ORAL ARGUMENT

Defendants believe oral argument would be helpful to fully explain the merits of a stay and to assist the Court in its determination.

## CONCLUSION

For the reasons set forth above, Defendants' motion for stay should be granted.

Respectfully submitted,

DATED: May 24, 2020          LAW OFFICES OF SAMUEL KORNHAUSER

By:/s/ Samuel Kornhauser

Samuel Kornhauser, Esq.

CA Bar No. 83528

Law Offices of Samuel Kornhauser

155 Jackson Street, Suite 1807

San Francisco, California, 94111

Telephone: (415) 981-6281

Email: skornhauser@earthlink.net


Attorneys for Defendants


BROOKS & DeRENSIS

Steven Brooks

111 Devonshire Street, Suite 800

Boston, MA 02109

Telephone: (857) 259-5200

Email: sbrooks@bdboston.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 24, 2020, a copy of the foregoing was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.


Dated: May 24, 2020                                <u>/s/ Dan Cowan</u>
                                                              Dan Cowan

# EXHIBIT A

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

Securities and Exchange
Commission,

    *Plaintiff-Appellee,*

    v.

Louis Navellier and Navellier &
Associates, Inc.,

    *Defendants-Appellants.*

No. 20-1437

## APPELLANTS' OPPOSITION TO APPELLEE'S MOTION TO DISMISS THE APPEAL FOR LACK OF JURISDICTION

The Securities and Exchange Commission's ("SEC") motion to dismiss this appeal on the grounds that the district court's orders are not a final judgment should be denied. This court has appellate jurisdiction on two grounds. First, this is an appeal under 28 U.S.C. §1292(a)(1)- an immediate appeal from an interlocutory order which has the serious effect of granting or refusing an injunction. *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment and Allied*

1

*Industries Fund* 967 F2d 688, 690 (1st Cir. 1992) [the order of the district court might have a serious consequence and the order can be effectively challenged]; *Carson v. American Brands, Inc.* 450 U.S. 79, 84, 101 S. Ct. 993, 997, 67 L. Ed 2d 59 (1981); *SEC v. Citigroup Global Markets Inc.* 752 F3d 285, 293 (2nd Cir. 2014)

Second, this is an appeal from a final judgment, since the partial summary judgment order (Dist. Ct. DKT#252), the district court's dismissal of the remaining claims (Dist. Ct. DKT#266) and denial of the motion for new trial/reconsideration, (Dist. Ct. DKT#270) effectively resolved all legal claims. *Mills v. Electric Auto-Lite Company* 296 U.S. 375, 379 n.3 (1970)

The district court summary judgment order reserved the issue of "remedies," including the SEC's request for $28,964,571 in "disgorgement" and prejudgment interest therein, plus statutory penalties and an injunction barring Appellants from violating, in the future, sections 206(1) and 206(2) of the Investment Advisers Act, as a precursor for lifetime bans against Appellants from acting as investment advisers.

## STATEMENT OF FACTS

The SEC brought this action against Navellier & Associates Inc. ("NAI") an investment advisory firm, and its principal owner Louis Navellier, an investment adviser, after the SEC breached its settlement agreement with NAI and Mr. Navellier. (Exhibit A p. 25, 26) under the terms of the settlement agreement, NAI agreed to pay $369,935 in disgorgement, $53,225 in prejudgment interest thereon and a $300,000 penalty for a total of $714,610. The SEC agreed to drop all claims against Mr. Navellier. (Exhibit B) However, when the SEC wrote up the "formal" settlement agreement it added a new, unagreed to, not even discussed term (censure) which was unacceptable to Appellants (Exhibit B, p. 492). When Appellants refused to modify the settlement agreement to add the new censure term, the SEC brought this action against both NAI and now against Mr. Navellier, alleging they had each violated §§ 206(1), (2) and (4) of the Investment Advisers Act and rules thereunder [15 U.S.C. §80b-6(1),(2),(4)] by allegedly disseminating to NAI's clients marketing brochures that supposedly "falsely" stated that

3

NAI's two Vireo investment strategies were live traded since 2001 and
were not back tested:

> The SEC *alleges* that materials used by
> NAI to market Vireo AlphaSector
> products falsely indicated the <u>track
> record of the Vireo AlphaSector
> **strategy**</u> was based on live trading
> since 2001.
>
> ....
>
> [and] the returns were "not back
> tested." (Emphasis and Bracketing
> added)
> (Exhibit 1, DKT# 252, pp. 4 and 5)
>
> ....
>
> The SEC *argues* that the evidence
> shows that Defendants marketed to
> potential and current clients that the
> <u>*Vireo*</u> AlphaSector <u>*strategy*</u> has been
> live traded since 2001 ... (Emphasis
> added)
>
> (Exhibit 1, DKT#252, p. 14)

However, that is not what NAI's marketing brochures stated.

NAI's "marketing" materials did <u>not</u> state that the "<u>Vireo</u> AlphaSector

<u>strategy</u> has been live traded since 2001." NAI's "marketing" materials

also did <u>not</u> state that the <u>Vireo</u> AlphaSector strategy "track record"

was based on live trading since 2001. What NAI's marketing materials

(DKT# 222-27 through 222-35) <u>actually</u> and truthfully stated was that

4

NAI's Vireo strategy tracked [F-Squared's] AlphaSector Index, and that
F-Squared's Index was based on the strategy of another investment
adviser (Morton) who had live-traded its strategy since 2001. NAI made
no representations about the performance record of the Morton
strategy:

> Navellier Vireo AlphaSector Allocator
> Premium is a new *strategy* that
> attempts to track an *index* known as
> the [F-Squared] AlphaSector Allocator
> Premium Index...
>
> ...
>
> the AlphaSector Premium Index *is
> based on having* an inception date of
> April 1, 2001. The *process of converting
> the [Morton] active strategy to an index
> implies that the returns presented,
> while not back tested, reflect theoretical
> performance* an investor would have
> obtained had it invested in the manner
> shown and does not represent returns
> that an investor may have actually
> attained, as an investor cannot invest
> directly into an index. (Emphasis
> added)
>
> (DKT 222-32, page 6 of 9)

The district court disregarded the actual language in the marketing brochures (DKT#222-27 through 222-35) and accepted the SEC's twisted versions of what NAI's marketing brochures supposedly said, rather than what they actually said. The district court also accepted as fact the SEC's unsupported allegation that its twisted version of what the marketing brochures stated ("Vireo live traded since 2001" and "not back tested") were false. Not only did NAI not make the two statements the SEC claimed it made[1], but NAI and Mr. Navellier presented evidence that its statements were <u>true</u>, i.e., that there was a Morton strategy that was live traded in 2001 and that the F-Squared Index[2] was not back tested. (Exhibit ) Despite no evidence presented by the SEC that either of the two statements in NAI's Vireo marketing brochures were "false" and despite Appellants' presented evidence that the statements were true, (Exhibit A) and despite the fact that the SEC

---

[1] Mr. Navellier never made any marketing statements about the two Vireo strategies.

[2] NAI licensed its two Vireo strategies from F-Squared. F-Squared provided NAI with weekly or monthly trading signals that suggested which exchange traded funds (ETF's) to buy, sell or hold and in what percentages. Their F-Squared investment signals mirrored the hypothetical trades of F-Squared AlphaSector Index. The investment strategy of F-Squared's AlphaSector Index was based on iterations of the Morton investment strategy.

was mischaracterizing what NAI's marketing materials actually stated, the district court held that the supposed statements were false. The district court also held that despite disputing evidence presented by Appellants (Exhibit A) that each disseminated the marketing materials with knowledge that the two statements were false, with intent to defraud investors with extreme recklessness, i.e., that they acted with scienter. The district court also held that each Appellant was negligent in not doing sufficient due diligence to discover the "fraud" before making the statements, and in relying on the written confirmation by the independent industry leader in investment performance calculation, NASDAQ OMX, that the AlphaSector Index was based on a live-traded back to 2001, not back tested strategy.

The district court granted summary judgment to the SEC, holding that NAI and Mr. Navellier intentionally and negligently made these false statements in violation of 206(1) and 206(2) of the Investment Advisers Act. The district court in its summary judgment order granted the SEC's summary judgment motion to deny Appellants' selective enforcement defense (that the SEC selectively enforced against Appellants but not the numerous other investment advisers who

disseminated the same marketing materials to the same clients, and that the SEC acted in bad faith by bringing this action to punish Appellants for not agreeing to the SEC's breach of the settlement.)

The district court in its summary judgment order also refused to strike the SEC's $23 million disgorgement claim and its claim for injunctive relief to ban Appellants from violating the Investment Advisers Act as a precursor to lifetime bans against each Appellant from continuing their lifelong business and profession as investment advisers.

The district court then directed the SEC to state in writing whether it would continue to pursue Counts Three and Four or would dismiss them. The SEC asked Appellants to agree to a dismissal of Counts Three and Four without prejudice. Appellants stated they would only assent to a dismissal <u>with prejudice</u> (in order to have an appealable judgment) to which the SEC agreed. The SEC then moved for dismissal <u>with</u> prejudice of Counts Three and Four which the district court granted. (Dist. Ct. DKT#266)

Thereafter Appellants moved for new trial/reconsideration which the district court denied without explanation. (Dist. Ct. DKT#270)

Appellants have filed this appeal from those orders which disposed of the SEC's claims.

The SEC had moved for an award of remedies consisting of "disgorgement" of NAI's "ill-gotten gains" but there were none, because the NAI clients had no losses to be returned, and thus there was no right to disgorgement, i.e., the investment advisory fees NAI earned and received for managing Vireo clients' monies which NAI management resulted in $278,556,875.36 in profit to NAI's clients from NAI's management. (Exhibit C, p. 5) The SEC is also improperly asking the district court to disgorge the entire $14 million NAI received in 2013 for the sale of its Vireo business goodwill to F-Squared more than a year after the allegedly violative marketing statements ceased. The SEC is also seeking an order enjoining Appellants from violating the Advisories Act as a precursor to banning them from being investment advisers. (Exhibit D)

The SEC is not legally authorized to seek any disgorgement. *Kokesh v. SEC* 137 S. Ct. 1635, 1644 (2017)  Indeed, the legal issue of whether the SEC can seek and a federal court can award "disgorgement" in a federal court civil enforcement action is presently

before the United States Supreme Court in *Liu v. SEC* 140 S. Ct. 451

(2019); *Liu v. SEC*, 2019 WL 2354737 (May 31, 2019)

    The SEC has continued to move the district court to order

disgorgement even though it is not an authorized remedy which the

district court has jurisdiction to grant and even though the Supreme

Court is deciding that issue, and even though this appeal has divested

the district court of jurisdiction to award disgorgement or prejudgment

interest therein. *United States v. George* 841 F3d. 55, 71-72 (1st Cir.)[3]

---

[3] Contrary to the SEC's assertion, Appellants did not "acknowledge" that the appealed-from district court orders are not final orders. What Appellants' counsel did was to notify the district court of their filing of this appeal, (which divested the district court of jurisdiction, which should have caused the district court to vacate the briefing schedule.) Since the district court did not, and Appellants feared the district court might issue a remedies order (even without jurisdiction) without Appellants' opposition, so they notified the district court but proceeded to file opposition to the SEC's "remedies" motion. Appellants also moved the district court to stay any further action since this appeal divested it of jurisdiction and because the Supreme Court is deciding the crucial disgorgement issue. (Exhibit E)

## ARGUMENT

## I.    THIS COURT HAS JURISDICTION TO CONSIDER THIS APPEAL PURSUANT TO 28 U.S.C. §1292(a)(1)

Even if *arguendo* the district court's orders are not a final

judgment (they are as discussed infra), this court still has jurisdiction to

consider this appeal pursuant to 28 U.S.C. §1292(a)(1) because the

effect of the district court's orders was to refuse to grant Appellants

injunctive relief and to grant the SEC injunctive relief. Section

1292(a)(1) states in relevant part:

> (a)[T]he courts of appeals shall have jurisdiction of appeals from:
>
> (1)Interlocutory orders of the district courts of the United States,... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...

The district court's summary judgment order granted the SEC's

motion to dismiss Appellants' claim of a selective enforcement defense.

(Exhibit 1, pp. 8-13) The district court denied Appellants' request to

dismiss the SEC's disgorgement prayer. (Exhibit 1, pp. 21-23) The

district court also denied Appellants' request to dismiss the SEC's claim

11

for injunctive relief to bar Appellants in the future from violating the
Investment Advisers Act and as a predicate for lifetime bans from the
securities industry. (Exhibit 1, pp. 20-21)

With regard to selective enforcement, Appellants alleged that they
were similarly situated to other investment advisers like Wells Fargo
Advisers and others who disseminated the same marketing materials
containing the same allegedly violative statements about "live traded
since 2001" and "not back tested" regarding the same strategies to the
same clients, shoes Vireo accounts they jointly managed, but that the
SEC enforced against Appellants but not the others, and that the SEC
did so in bad faith to punish Appellants for not initially agreeing to the
SEC's demand to modify the settlement agreement they had entered
into. The essence of the selective enforcement allegations were to enjoin
the SEC from pursuing this action and enforce the terms of the
settlement. By granting summary judgment dismissing the selective
enforcement claim, the district court was effectively refusing to order
enforcement of the settlement agreement. That is the equivalent of
denial of injunctive relief, which refusal is an appealable order. *SEC v.
Citigroup Global Markets Inc.* 752 F3d. 285, 293 (2nd Cir. 2014) In

*Citigroup* the SEC and Citigroup reached a settlement agreement whereby Citigroup agreed to not engage in violation of the Securities Act and to take steps not to engage in securities fraud in the future. The district court refused to approved the settlement, in part because it felt an injunction to obey the law was not sufficient. The district court ordered the parties to trial. The SEC sought an interlocutory appeal pursuant to 28 U.S.C. §1292(a)(1) which the Court of Appeals allowed because the effect of the court's denial of the request to deny enforcement of a settlement which would cause irreparable harm in forcing the parties to trial.

Here the district court's denial of summary judgment as to Appellants' selective enforcement/ bad faith had the effect of refusing to enforce the settlement and forcing continuation of this enforcement litigation against Appellants.

This Court has likewise held that an appeal from an interlocutory order, which might have a serious, perhaps irreparable consequence and the order can be effectively challenged, confers appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

In *Manchester Knitted Fabrics Inc. v. Amalgamated Cotton Garment and Allied Industries Fund* 967 F2d. 686, 690 (1st Cir. 1992) the district court refused to order an employer to contribute to a retirement fund for the benefit of employees. The fund appealed and this Court held that although the court did not specifically grant injunctive relief, the effect of the district court's order refusing to order the employer to contribute was injunctive which had serious consequences in possibly depriving employees of future benefits.

Here, too, the effect of the district court's erroneous summary judgment order not only forces the Appellants to continue to litigate, but improperly exposes Appellants to $28 million in legally unauthorized disgorgement plus millions more in penalties. It could also effectively deprive Appellants of the opportunity to fairly defend themselves by appealing the district court's clearly erroneous summary judgment decision (where the district court improperly decided disputed material issues of fact (*Noonan v. Staples, Inc.* 556 F3d. 20, 25 (1st Cir. 2009)). A huge, unsupported $28 million disgorgement award (when the SEC had agreed that $369,000 was the proper disgorgement amount) would make it extremely difficult, if not impossible, to post an appeal

bond to pursue the appeal, thereby possibly depriving Appellants an opportunity to appeal. Appellants believe the SEC is seeking $28 million in disgorgement, even though the maximum disgorgement (even if it was a legal remedy- it is not) would be $228,856. (Exhibit D)

## II.   THE DISTRICT COURT ORDERS ARE APPEALABLE FINAL ORDERS

This appeal should not be dismissed because the district court orders are final, appealable orders. The partial summary judgment, coupled with the district court's dismissal <u>with prejudice</u> (which defendants insisted on so there would be a complete resolution of the claims and an immediate appeal therefrom) resolved all claims and constituted a final judgment. *Mills v. Electric Auto-Lite Company* 296 U.S. 375, 379 No.3 (1970)

The fact that the SEC is improperly seeking an order for "remedies," which are not legally authorized, renders the judgment final. There is nothing left for the district court to do. It has decided all claims and cannot legally award the SEC the disgorgement remedy it seeks. *Kokesh v. SEC* supra, *Liu v. SEC* supra

Where, as here, a district court has issued an order resolving liabilities, but not damages (which may not be available) the order is still an appealable order. *Mills v. Electric Auto-Lite Company* 296 U.S. 375, 379 No.3 (1970) In *Mills* the Seventh Circuit and ultimately the United States Supreme Court decided Defendants' appeal even though the district court "judgment" decided only the liability issues and reserved the remedies (injunction) issue, pending a higher court decision.

In the present case, all claims have been resolved. The remedies are also resolved because the disgorgement "remedy" the SEC seeks is not a remedy the district court is authorized to grant, so there is nothing left for the district court to rule on.

In *United States v. George* 841 F3d 55, 71-72 (1st Cir. 2016) this Court issued a judgment but reserved the issue of whether to order forfeiture, and if so, in what amount. The defendant filed a notice of appeal. After the notice of appeal was filed, the Court held a hearing on forfeiture and amended the judgment to add $1,382,214 in forfeiture. The Court of Appeals vacated the forfeiture award because once the

16

notice of appeal was filed, the trial court had no jurisdiction to hear or order forfeiture *Id* at 72:

> Here there was no forfeiture order
> included in the original judgment,
> merely an allusion to the possibility
> that forfeiture might be ordered...
> and took no position as to whether
> forfeiture would be ordered at all.
> Under these circumstances, the
> pendency of the appeal deprived the
> court of jurisdiction to issue its
> amended judgment [awarding
> forfeiture].

Here, the district court dismissed with prejudice the Third Count (aiding and abetting) and the Fourth Count (206(4) violation). Thus, the liability and "remedies" issues as to those two separate claims have been decided and are complete as to all parties to this litigation. There is nothing left to decide as to those separate claims and the judgment is final as to those separate claims.

## CONCLUSION

For the reasons set forth above, the SEC's motion to dismiss this appeal should be denied.

Respectfully submitted,

DATED: April 29, 2020

By:/s/ Samuel Kornhauser
Samuel Kornhauser, Esq.
CA Bar No. 83528
Law Offices of Samuel Kornhauser
155 Jackson Street, Suite 1807
San Francisco, California, 94111
Telephone: (415) 981-6281
Email: skornhauser@earthlink.net

Attorneys for Defendants

BROOKS & DeRENSIS
111 Devonshire Street, Suite 800
Boston, MA 02109
Telephone: (857) 259-5200
Email: sbrooks@bdboston.com

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Opposition Memorandum complies with the requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Century Schoolbook, a proportionately space font. I further certify that this Opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3174 words according to the count of Microsoft Word, excluding the items listed in Federal Rule of Appellate Procedure 32(f).

/s/Samuel Kornhauser
Samuel Kornhauser
